JAMES VIRGIL FRAZIER *et al.* Appellees, *vs.* OLLIE MAY PATTERSON *et al.* Appellants.

*Opinion filed December 22, 1909.*

1. WILLS—*wills of two persons may be united in one instrument.* There is no legal objection to uniting the wills of two persons in a single instrument if such instrument can be given effect, on the death of either, as the will of that one.

2. SAME—*a joint will is the will of each maker.* A joint will contained in a single instrument is the will of each of the makers, and at the death of one it may be probated as his will and be again probated at the death of the other as the will of the latter.

3. SAME—*joint will defined—such will need not be reciprocal.* A joint will is one where the same instrument is made the will of two or more persons and is jointly signed by them, but it is not necessarily mutual or reciprocal, and if it is not reciprocal it is simply the individual will of each signer and is subject to the same rules as though the wills were several.

4. SAME—*mutual wills defined—what must be shown to preclude revocation.* Mutual wills are the separate wills of two per-

sons which are reciprocal in their provisions, and where the instruments are separate it is necessary, in order to deprive either party of the right of revocation, to show that the wills were executed in pursuance of a compact of the parties and that each is consideration for the other.

5. SAME—*joint and mutual will defined—when such a will is irrevocable.* A joint and mutual will is one executed by two or more persons jointly, the provisions of which are reciprocal, and which shows on its face that the devises are made one in consideration of the other; and such a will, while revocable by one during the lifetime of both, upon notice to the other, becomes irrevocable after the death of one if the survivor takes advantage of the provisions made by the other.

6. SAME—*joint and mutual will evidences a compact.* A joint and mutual will cannot be said to have been executed by the parties without some previous understanding or agreement between them, and where it shows on its face that the provisions of one were consideration for the provisions of the other, no evidence other than the will itself and the acts of the parties is necessary to prove a compact which will prevent revocation by the survivor, who has taken advantage of the provisions made by the other.

APPEAL from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding.

ANDERSON & MATTHEWS, for appellants.

W. E. WILLIAMS, and A. CLAY WILLIAMS, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Thomas R. James and Jane G. James, husband and wife, acquired title to a farm of about two hundred acres in Pike county, Illinois, a part of which was owned by each in severalty and the residue was owned by them jointly. The several tracts so acquired constituted a part of a regular subdivision, but their respective titles were so intermixed as to make it difficult to trace the lines of ownership except by recourse to their numerous deeds. The entire body of land constituted one farm and was occupied and farmed in

common. They had one child, Eva, who married a man by the name of Frazier. Some time prior to the year 1889, the date not being given, the following joint and mutual will was executed by them:

"*Know all men by these presents,* that we, Thomas R. James and Jane G. James, wife of said Thomas, being of sound, disposing mind ·and memory and desirous of disposing of our worldly estate after our deaths, respectively do make,' publish and declare this and none other to be our and each of our last will and testament, hereby revoking all and singular any other will or wills by us or either of us at any time made.

"*First*—It is our will that all our debts, joint and several, together with funeral expenses, be fully paid directly after our deaths, respectively.

"*Second*—We give, devise and bequeath to each other, respectively, all such estate, right, title and interest as we, respectively, hold, possess and enjoy in and to the following described real estate, viz.: The north-west quarter of the north-east quarter, the north-east quarter of the north-west quarter, the south-west quarter of the north-east quarter and the south-east quarter of the north-west quarter of section eleven (11), and twenty-nine and one-half acres on the west side of the east half of said section 11, all in township 6, south, range 4, west of the fourth principal meridian, in Pike county, Illinois, being the same premises on a part of which we now reside, and all of which we own, not as tenants in common, but each his and her part in severalty, hereby giving and devising the land of the one who may die first to the survivor during his or her natural life.

"*Third*—After the decease of both, it is the intention of this testament that the whole of said real estate, or any other we may own at the time of the decease of the survivor of us, shall go to and be held and enjoyed by our daughter, Eva Frazier, for and during her natural life, ·and after her death it is our will that the whole of our said real estate, and every part and parcel thereof, with the remainder in fee simple, shall pass to and in such estate vest in the lawful issue and children of the body of the said Eva Frazier living at the time of her decease, by her present or any other husband.

T. R. JAMES, (Seal.)
JANE G. JAMES. (Seal.)"

Thomas R. James died in 1889 and his widow filed the will for probate, which was duly granted. She thereupon entered into the possession and control of the whole of said farm under the will, accepted its provisions and continued

to use and occupy the whole of said premises, and to enjoy the rents, issues and profits thereof, to the exclusion of the heirs of Thomas R. James, until the date of her death, which occurred in 1909. Eva Frazier died prior to the death of her mother, and left surviving her James Virgil Frazier, Charles Lester Frazier and Ollie May Patterson, her only children and the only descendants of the said Thomas R. and Jane G. James. On the 21st day of May, 1900, Jane G. James executed another will, by which she attempted to revoke the joint and mutual will so far as it affected her individual property and make a different disposition of her estate. The present bill is filed by James Virgil Frazier and Charles Lester Frazier, children of Eva Frazier, for the purpose of having the last will of their grandmother set aside and for a partition of the real estate described in the joint will in accordance with its provisions. There is no controversy about the facts. A demurrer to the bill was overruled and the material allegations were admitted by the answer. On the hearing no evidence of any agreement or compact between the husband and wife, other than that afforded by the will itself, was introduced. The court below sustained the bill and entered a decree for partition among the children of Eva Frazier in accordance with the provisions of the joint will. From this decree Ollie May Patterson and other defendants below have appealed to this court.

The parties agree that the single question presented for our consideration is, Does the joint will itself, on its face, sufficiently prove a compact or agreement to make a will mutually disposing of their property, each for and in consideration of the will of the other? Appellants contend that this question should be answered in the negative, while appellees insist that it should be answered in the affirmative. This is the issue.

There is no legal objection to uniting the wills of two persons in a single instrument if such instrument can be

given effect, on the death of either, as the will of that one. (*Gerbrich* v. *Freitag,* 213 Ill. 552; *Peoria Humane Society* v. *McMurtrie,* 229 id. 519.) A joint will contained in a single instrument is the will of each of the makers, and at the death of one may be probated as his will and be again probated at the death of the other as the will of the latter. Wills may be joint or mutual or both joint and mutual. A joint will is one where the same instrument is made the will of two or more persons and is jointly signed by them. It is not necessarily either mutual or reciprocal. Mutual wills may be defined as the separate wills of two persons which are reciprocal in their provisions. A will that is both joint and mutual is one executed jointly by two or more persons, the provisions of which are reciprocal, and which shows on its face that the devises are made one in consideration of the other. These several classes of wills have some characteristics that distinguish them one from the other. A joint will which is not reciprocal is simply the individual personal will of each of the persons signing the same and is subject to the same rules that would apply if the will were several. Mutual wills,—that is, where two persons execute wills reciprocal in their provisions but separate instruments,—may or may not be revocable at the pleasure of either party, according to the circumstances and understanding upon which they were executed. To deprive either party of the right to revoke such mutual will it is necessary to prove, by clear and satisfactory evidence, that such wills were executed in pursuance of a contract or a compact between the parties, and that each is the consideration for the other; and even in cases where mutual wills have been executed in pursuance to a compact or agreement between the parties, the law appears to be well settled that either party may, during the lifetime of both, withdraw from the compact and revoke the will as to him. A joint and mutual will is revocable during the joint lives by either party, so far as relates to

his own disposition, upon giving notice to the other, but it becomes irrevocable after the death of one of them if the survivor takes advantage of the provisions made by the other. 30 Am. & Eng. Ency. of Law, (2d ed.) 621, and cases cited; 1 Redfield on Wills, 182, 183; *Walpole* v. *Orford,* 3 Ves. Jr. 402; Schouler on Wills, sec. 455, *et seq.*

When mutual or joint wills first came up for consideration, the courts of England, both common law and spiritual, pronounced against them, and the same unfavorable position was taken by some of the earlier American cases, but the later and better opinions in both countries now sustain such wills where they have been executed with the necessary formalities and have not been revoked by some later instrument. (Schouler on Wills, 456, and cases there cited.) The leading case in England on this subject is *Dufour* v. *Pereira,* 1 Dick. 419. In that case it was held that a joint and mutual will might be revoked by both jointly or that it might be revoked separately, provided the party intending it had given notice to the other of such revocation, but that neither of them could, during their joint lives, revoke it secretly, nor could it be done by the survivor after the death of the other; that such wills constituted a mutual contract between the parties which could not be rescinded by the survivor after the death of one, on the theory that the first that dies carries his part of the contract into execution. In such case the courts will not permit the other party to afterwards break the contract. The doctrine of this case has been approved in a number of well considered cases in this country. *Allen* v. *Boomer,* 86 Wis. 364; *Edson* v. *Parsons,* 155 N. Y. 555; *Carmichael* v. *Carmichael,* 72 Mich. 76; *Bower* v. *Daniel,* 198 Mo. 289.

So far as we are advised this doctrine has never received the unqualified approval of this court, nor are we aware that there has ever been any express or even implied disapproval of it. It seems to rest upon sound, equitable grounds. The case at bar is a forceful illustration of the

injustice that would result if the survivor is permitted, after having received the full benefits of the provisions made for her, to revoke the will on her part, which presumably formed the consideration for the devises to her.

The appellants do not seriously controvert any of these propositions, but they contend that it is necessary, in order to sustain the decree below, that proof *aliunde* the will should be introduced, showing that the mutual will was the result of a contract or mutual understanding that such will should be made. There are cases which appear to support this contention, but it will be found that this rule is more particularly applicable to mutual wills rather than to those which are both joint and mutual. If two persons make wills, each devising his property to the other, there is no necessary inference that the wills were the result of any mutual or reciprocal agreement or understanding. Such wills might be executed without either party knowing that the other had executed his will; but where the parties execute their wills by the same instrument, it is not possible that such course could be adopted without some previous understanding or agreement between them. Each would necessarily know what disposition the other had made of his property. This inference is especially strong where the parties are husband and wife and where they have a common interest in the welfare of the devisees. In the case at bar the parties had one daughter. They had a mutual interest in her. They desired that she should have the enjoyment of their real estate during her life and at her death her children should take it in fee. If evidence of a mutual compact is necessary in such case, that evidence is afforded by what the parties did. We cannot see how the situation would be any different if witnesses had testified that they heard this husband and wife discuss what disposition they would make of their respective estates, and that they agreed with each other that they would make a joint will such as they did make. The fact that they made

such will is satisfactory proof to our minds that it was done in accordance with their mutual compact to dispose of their property in this manner.

We think the case was properly disposed of by the trial court, and its decree is accordingly affirmed.

*Decree affirmed.*