IDA CAMPBELL, Appellee, v. MARIA DUNKELBERGER et al.,
Appellants.

**WILLS:** Mutual, Reciprocal Joint Wills—Revocability—Estoppel.
1 Mutual (reciprocal) joint wills are irrevocable when executed
in pursuance of a contract or compact between the parties, each in
consideration of the other, even concerning property held in
severalty, if followed by an acceptance of the provisions thereof
by the one surviving.

PRINCIPLE APPLIED: A husband and wife executed and
signed a joint will, the terms of which were in substance as fol-
lows:

''We give, devise and bequeath all our property which we may
own at our death, as follows'':

Item 1. The husband provides that, if he dies first, the wife
shall have a life estate in all his property except as to a certain
hotel property which the wife shall have in fee simple.

Item 2. The wife provides that, if she dies first, the husband
shall have a life estate in all her property.

Item 3. The husband provides that, if he dies first, the re-
mainder of his real property, in a certain named township, shall
pass in fee simple to their two sons, on condition that the sons
pay his estate $65 per acre therefor; otherwise to pass to his
heirs equally.

Item 4. The wife provides that, if she dies first, the remainder
of her real property, in a certain named township, shall pass to
the same two sons on condition that they pay her estate $65 per
acre therefor; otherwise to pass to her heirs equally.

Item 5. The husband and wife both provide that, at the death
of both, all and every part of their property not hereinbefore
disposed of shall pass equally to their living and dead children
(provided the dead leave issue).

The husband died. At the time of his death, he and his wife
were both seized of real estate in this state. The wife was ap-
pointed administratrix and she caused the will to be probated
and fully accepted the provisions thereof. Later, she attempted
to sell her own real estate in disregard of the will. *Held*, the
will was *irrevocable*—that the wife was estopped to dispose of the
property.

**WILLS: Life Estate—Remainder—Construction.** The intent infer-
able from one clause of a will may be qualified by another clause
indicating a different intent; but, no inconsistency appearing,
each clause will be given its full force and effect. So *held*
where one clause granted a life estate and another clause granted
the "remainder".

PRINCIPLE APPLIED: See No. 1, it being held that Items
1 and 3 were entirely harmonious and that the sons had no right
to purchase until the life estate in the wife was satisfied.

**WILLS: Conditions Precedent—Non-Happening of Condition—**
**Nullification of Clause—Construction.** A clause in a will, the ef-
fectiveness of which depends on a condition which never hap-
pens, must fail. So *held* where the right to property depended
on the husband's surviving the wife, but the wife survived the
husband.

**WILLS: Mutual Joint Will—Construction Prior to Death of One**
**Testator.** It is proper to construe a mutual, joint, irrevocable
will prior to the death of one of the testators.

*Appeal from Boone District Court.*—HON. R. M. WRIGHT and
HON. C. E. ALBROOK, Judges.

FRIDAY, JUNE 18, 1915.

REHEARING DENIED SATURDAY, OCTOBER 30, 1915.

SUIT to enjoin a surviving widow from disposing of cer-
tain property alleged to have been jointly devised by her
and her husband during his lifetime. Decree was entered as
prayed, and she and the son, whom she would benefit, ap-
peal.—*Affirmed.*

*W. T. Thompson* and *F. Hollingsworth,* for appellants.

*Healy & Thomas,* for appellee.

LADD, J.—Elias and Maria Dunkelberger, husband and
wife, in June, 1908, executed in due form the following will:

"Know all men by these presents: That we, Elias Dunk-
elberger and Maria Dunkelberger, of Boone county, state of

Iowa, being of sound mind and memory, do make, publish and declare this to be our last will and testament, hereby revoking all former wills at any time heretofore made by us.

"We give, devise and bequeath all our property, both real and personal of every kind which we may own at our death, as follows, that is to say:

"Item I. That subject to payment of all just debts and funeral expenses it is the will of Elias Dunkelberger, that in the event he die before Maria Dunkelberger, his wife, that she shall take what is known as a life estate in all his property both real and personal to have and to hold the same during her natural life and to use all the rents, profits and income of the same, with the single exception of the hotel property in Ogden, Iowa, known as the Ogden House, which said Elias Dunkelberger desires shall be her property in fee simple to make such disposal of as she sees fit.

"Item II. In the event Elias Dunkelberger shall survive Maria Dunkelberger, his wife, it is her will that subject to the payment of all her just debts and funeral expenses, that Elias Dunkelberger shall take what is known as a life estate in all her property, both real and personal, to have and to hold the same during his natural life and to use all the rents, profits and income of the same as long as he lives.

"Item III. It is the will of Elias Dunkelberger that in the event Maria Dunkelberger survive him that the remainder of all the real estate owned by him in Grant township, Boone county, Iowa, shall go to and be the absolute property of Daniel B. Dunkelberger and Joe Dunkelberger, his two sons, jointly, in fee simple, provided, however, that they pay to my estate the sum of $65.00 per acre for said land, but if they elect not to do this, then said land shall go equally to the heirs of Elias Dunkelberger's estate.

"Item IV. It is the will of Maria Dunkelberger that in the event Elias Dunkelberger survive her that the remainder of her real estate, located in Grant township, Boone county,

Iowa, shall go to her two sons, Daniel B. Dunkelberger and Joe Dunkelberger, jointly, to be their property absolutely in fee simple, provided, however, that they pay to my estate the sum of $65.00 per acre, but if they do not elect to do this, then said land shall go to the heirs of Maria Dunkelberger's estate equally.

"Item V.   It is the will of both Maria Dunkelberger and Elias Dunkelberger that at the death of both, all the real estate and personal property and the rest and residue of our estates, not hereinbefore disposed of, shall go to our heirs in equal shares and by that we mean that all our children living and dead shall have an equal share in our estate, if the deceased children have surviving issue."

Elias Dunkelberger died some years ago, and Maria Dunkelberger caused the above will to be admitted to probate, was appointed administratrix with the will annexed, and, on due notice to the heirs, the estate was settled and she discharged as administratrix in 1910.   She accepted under the will, including the Ogden Hotel property, which she disposed of, and has appropriated the proceeds thereof to her own use. At the time of his death, deceased was owner of a farm of something over 240 acres in Boone county, and his widow held title to 120 acres therein, these being the tracts mentioned in Items 3 and 4 of the will; and it is alleged in the petition that said widow is about to dispose of said 120 acres by deed, or has so done, or to will the same to Joseph Dunkelberger; and further, that Clause or Item IV of the will is invalid, and under the said will said land passes, under the fifth clause, to the heirs generally, of which plaintiff is one.   After demurrer to the petition had been overruled, an answer was filed and a demurrer thereto sustained and a decree entered as prayed, enjoining the widow from disposing of the land in her name.

I.   No question is made but that the remedy was available to plaintiff.   See *Newman v. French,* 138 Iowa 482 (18 L. R.

A. (N. S.) 218 and note). That two persons may unite in a single will appears from *Baker v. Syfritt*, 147

1. WILLS: mutual, reciprocal joint wills: revocability: estoppel.

Iowa 49. The joint will contained in a single instrument is the will of each of the makers, and at the death of one it may be probated as his will and be again admitted to probate at the death of the other, as the will of the latter. A joint will is one where the same instrument is made the will of two or more persons and is jointly signed by them. Such will is not necessarily mutual or reciprocal. Mutual wills may be defined as the separate wills of two persons which are reciprocal in provisions. So that a will may be both joint and mutual; that is, one executed by two or more persons and containing provisions which are reciprocal. It is apparent that a joint will which is not reciprocal is merely the individual will of each of the persons signing the same, and is subject to the same rules which apply if the wills are several. Mutual wills—that is, where two persons execute wills reciprocal in their provisions, either in separate instruments or in the same instrument,—may or may not be revoked at the pleasure of either party, according to the circumstances and understanding upon which they have been executed. In order that either party be denied the right to revoke such wills, it must appear by clear and satisfactory evidence or on the face of the wills that these were executed in pursuance of a contract or compact between the parties, each in consideration of the other; but even then either party may revoke during the lifetime of both, provided the other have notice of the intention of the revocation. After the death of one of the parties, however, if the survivor takes advantage of or accepts the provisions made for the other, it would seem that the survivor may not dispose of his property otherwise than according to the terms of the will. These principles are well established by the authorities, especially those hereinafter cited. The important inquiry in this case, then, is whether there was any contract or com-

pact between the husband and wife, testators, with reference to the disposition of the property under the will set out. Of course, two persons might make wills, each devising property to the other, and there be no necessary inference that such wills were the result of any agreement or understanding, for they might be executed without either knowing of the action of the other. But where the wills are in the same instrument and executed and signed by the parties, it is scarcely possible that this could happen without a previous understanding or agreement between them. Each would probably know the disposition the other had made of his property, and this inference is especially strong where the parties are husband and wife and have a like interest in the welfare of the devisees. Here they designated their seven children and two children of a deceased child as their residuary devisees, and two of these, in former clauses, were given the remainder in the lands of the testators in which each had given to the other a life estate. Moreover, though each, in the first four clauses of the will, undertook to dispose of the property in his name (and he must have done so, if at all), the will is introduced as a joint instrument by reciting that "we give, devise and bequeath all our property", etc. And in the fifth clause they join in giving all of their real and personal property, not otherwise disposed of, to their heirs. These circumstances indicate as definitely and certainly as any evidence could that the husband and wife had a mutual understanding one with the other that they would execute a will such as was made, and we are satisfied that it was done in pursuance of an agreement to dispose of their several properties in the manner indicated in the will. Whether such arrangement is to be regarded as valid under Sec. 3154 of the Code, prohibiting either spouse from contracting with reference to the inchoate interest in the property of the other, is not discussed in the briefs and would not seem material where the benefits have been accepted and the estoppel of the survivor

rests in such acceptance. If so, the widow accepted the benefits under such agreement and may not revoke the portions of the will with respect to her part of the agreement. It is true the language differs somewhat from the will in *Baker v. Syfritt, supra.* There, throughout the will, the property, though owned in severalty, was treated as belonging to both the husband and wife, while in the case at bar, the testators were content to recite enough to indicate that they were acting together, and, in pursuance thereof, each disposed of the property belonging to him. There is no reason why reciprocating mutual wills may not devise property held and owned in severalty, and we have discovered no authority so deciding. In *Bower v. Daniel,* 198 Mo. 289, (95 S. W. 347), William Daniel and his wife executed a joint will disposing of the property, part of which was situated in Missouri and part in Iowa, separately; Daniel giving to his wife all of his property during life, remainder to be divided among his children,— a daughter to receive a certain lot, and the rest of the property to go to others. The wife made a similar provision for the husband and directed that the remainder be divided among her children. The wife died first and her will was probated, Daniel accepting thereunder. He subsequently made a somewhat different distribution of the property and a daughter insisted upon a distribution in accordance with the provisions of the will, alleging that it embodied a contract by which the property of the joint makers of the instrument was disposed of, and was irrevocable. Upon an exhaustive review of the authorities, the court held that a contract was to be inferred under which to dispose of all of the property, and that the survivor, William Daniel, was without the power of revoking any of the conditions of the will. To the same effect see *Carmichael v. Carmichael,* 72 Mich. 76 (16 Am. St. 528); *Allen v. Boomer,* 82 Wis. 364 (52 N. W. 426); *Robertson v. Robertson* (Miss.), 47 So. 675; *Frazier v. Patterson,* 243 Ill. 80 (90 N. E. 216); *McGuire v. McGuire,* 11 Bush (Ky.) 142;

*Dufour v. Pereira,* 1 Dickens 419 ; *Edson v. Parsons,* 155 N. Y. 555 (50 N. E. 265).

. Under this joint will, the widow accepted the life estate in her husband's property and also the hotel, which, but for the agreement, she might not have acquired from her husband. Moreover, such agreement had induced him to leave the residue of his estate to his children, when, but for the joining of the wife therein in the disposition of the "rest and residue of our estates," he might have made other disposition thereof. This was a sufficient consideration for the agreement fairly to be implied from the language of the will, and the portion of the contract having been fully performed by the deceased, the widow will not be permitted to avoid any of its provisions, and she is estopped from disposing of the property as charged in the petition.

II. Appellant contends that Item 3 should be construed as giving the two sons the option to take the land upon the payment to the estate of $65 per acre at the time of his death,

2. WILLS : life estate : remainder : construction.

and that the first item should be construed as being so modified by the third item. It is true, as contended, that the intent inferable from one clause of a will may be qualified by another clause indicating a different intent, and that "remainder" is not always accorded a technical meaning. See *Peet v. Commerce & E. S. R. Co.,* (Tex.) 8 S. W. 203. But the two clauses referred to are in exact harmony and, when construed, indicate very plainly that in the first clause the life estate in the farm is the subject of the gift to Maria Dunkelberger, and that the remainder in the real estate owned by the husband is that which the sons are given the option to purchase. In other words, the word "remainder", as found in the third clause, is to be accorded a technical meaning. These sons are to share equally with the other heirs under the fifth clause of the will, and evidently the price fixed was that likely to be the value of the land at the time of the demise of the sur-

viving testator.   The petition prayed that the fourth clause of the will be declared void, and as this entire clause was upon the condition that her husband survive her, there is no escape from this conclusion.   The option to purchase the remainder is subject to this condition precedent,

3. WILLS: conditions precedent: non-happening of condition: nullification of clause: construction.

and notwithstanding the appellant's contention, we think it is in harmony with the entire will.   In other words, these two sons, having the privilege to purchase the other farm, are denied that of acquiring the land devised by the wife.   Evidently the testators did not wish to give them the entire property, but to permit them to take one farm and leave the other for the heirs generally.   No inconsistency whatever is involved.   The land described in the fourth clause of the will was "not hereinbefore disposed of"; for the will speaks as of the date of the testator's death.   The objection that Item 4 may not be construed, for that Maria Dunkelberger is still living, is without merit; for, having entered into a contract to will the property as she did, it is proper to determine the interests of those who may contend that she may not revoke the conditions of the will.   This being so, it necessarily follows that the option

4. WILLS: mutual joint will: construction prior to death of one testator.

therein contemplated in the purchase of the land of the deceased husband may not be exercised until the demise of the widow.

We discover no error in the record and the decree enjoining her from disposing of the property described in the will in any manner is—*Affirmed.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.