Dewees's Estate.

*Axel Teisen,* for exceptants; *Clement, Donahue & Irwin,* contra.

STEARNE, J., May 3, 1929.—The exceptions involve the revocability, by a survivor, of a joint will. The Auditing Judge was so clearly correct in his ruling that were it not for the rather unusual and interesting subject-matter, and the earnest argument of counsel for the exceptants, we would dismiss the exceptions without further comment.

Joint, mutual, reciprocal or double wills, while receiving judicial sanction, nevertheless, are no favorite children of the law. They are very apt to frustrate the intent of their makers, and, consequently, exact a disproportionate share of judicial scrutiny and require considerable study.

The *desideratum* for joint or mutual wills is founded upon the desire of persons with common interests—usually derived from blood or affection—to dispose of their estates to the same persons and for similar objects. At the time of the execution of such an instrument, the joint testamentary scheme may be entirely proper, just and equitable, but changing circumstances and new situations arising after the death of one of the parties may render such a disposition wholly unjust and inequitable, and quite beyond the primary intent of the joint testators.

A valuable and accurate treatise on the subject of the revocability of mutual or reciprocal wills has been written by Richard J. Partridge, Esq., of the Philadelphia Bar, which is published in the Law Review of the University of Pennsylvania, volume 77, January, 1929.

As pointed out in the reporter's note to the case of Frazier *v.* Patterson, 243 Ill. 80 (27 L. R. A., N. S., 508), courts at one time were inclined to

refuse probate of such wills because of the implied covenant against revocation, which is one of the most essential and characteristic features of such wills. However, their validity is now generally conceded, and they are admitted to probate in most jurisdictions. While there is confusion and some conflict upon the question of revocability of a joint and mutual will by one of the makers after the death of the other, the instrument, *as a testamentary instrument,* may be revoked. Irrespective of the express or implied covenant against revocation, a later will executed by one of the parties is properly probated. A court of equity may, however, in a proper case, give effect to the will, *as a contract,* and enforce the contract in the same manner as a valid agreement to make or not to revoke an individual will. It is chiefly on the point of the validity and enforcement of the will as a contract that courts have treated the subject of revocability.

An accurate consideration of the point at issue in the present case requires that a careful distinction be observed between three separate types of wills, viz.: (1) Joint and mutual (reciprocal) wills; (2) joint wills; (3) mutual wills.

1. Wills joint and mutual (reciprocal) are generally held to contain within themselves sufficient evidence of the contract without definite evidence to the contrary: Dufour *v.* Pereira, 1 Dick. 419 (1796); Frazier *v.* Patterson, 243 Ill. 80 (1909); Rastetter *v.* Hoenninger, 214 N. Y. 66 (1915); Campbell *v.* Dunkelberger, 172 Iowa, 385 (1915); Bower *v.* Daniel, 198 Mo. 289 (1906). The joinder of the parties reveals their common intent, or the meeting of their minds; the mutuality supplies the consideration.

2. Wills joint, but not reciprocal, lack the element of consideration, *i. e.,* mutuality, though manifesting a common intent.

3. Wills mutual or reciprocal, but not joint, require additional evidence of the meeting or joinder of the minds.

Both the latter types of wills, (2) and (3), require additional evidence of the contract, according to majority law. The present case, being a joint will, without the element of mutuality, falls within class (2) of the above classification and requires additional evidence of the contract, according to the generally accepted law in other states. However, it is not necessary to go outside of Pennsylvania to discover authority for the present case. In Rhodes's Estate, 277 Pa. 450, it was held that a joint and mutual will requires additional evidence of the contract; then, *a fortiori,* a will that is merely joint and contains no reciprocal features must likewise be held to require additional proof of the contract. The Auditing Judge, therefore, very properly relied on Rhode's Estate in requiring additional proof of the contract.

It is interesting to note, however, that Rhode's Estate relied, *inter alia,* upon Edson *v.* Parsons, 155 N. Y. 555, in which *a mutual will not joint* was held to require additional evidence of the contract, whereas a later case, Rastetter *v.* Hoenninger, 214 N. Y. 66, in the same jurisdiction, held, *contra* to Rhode's Estate, that *joint and mutual wills* contain within themselves sufficient evidence of a contract, without definite evidence to the contrary.

However, Cawley's Estate, 136 Pa. 628; Hoffert's Estate, 65 Pa. Superior Ct. 515, and Rhode's Estate, *supra,* clearly fix the rule in Pennsylvania as to the requirement of additional evidence of the existence of a contract beyond the mere terms of the will itself.

The ruling of the Auditing Judge being clearly correct and abundantly supported by authority, there is no merit in the exceptions herein filed. They are, accordingly, dismissed, and the adjudication is confirmed absolutely.