## In the Matter of the Estate of Ottylie Briick, Deceased.
## Otto Briick, Jr., Executor, Appellant, v. Bruno Briick and Mary Briick, Appellees.

### Gen. No. 11,289.

Second District, First Division.

December 16, 1959.

Rehearing denied January 23, 1960.

Released for publication February 19, 1960.

Robert W. Rooney and Michael H. Lyons, of Chicago, H. Arthur Hammel, of Joliet (Robert W. Rooney, of counsel) for appellant.

Krusemark and Bertani, of Joliet (John Verklan, of counsel) for appellees.

JUSTICE DOVE delivered the opinion of the court.

On March 16, 1955, Otto Briick, Sr. and Ottylie Briick, his wife, executed a joint instrument which they declared was their last will and testament. On October 13, 1956, Otto Briick, Sr. died and thereafter this will was lodged in the office of the Clerk of the Probate Court. On December 10, 1956, Ottylie Briick, his widow, executed another will and thereafter, on May 11, 1957, died.

The joint will dated March 16, 1955, named Otto Briick, Jr. and Helen Walter, a daughter of the testators, executors thereof and on May 21, 1957, Otto Briick, Jr. filed his petition in the probate court of Will County praying for an order admitting this will to probate as the last will of Ottylie Briick deceased. On May 24, 1957, Bruno Briick and Mary Briick, who were named executors of the will dated December 10, 1956, filed in the probate court of Will County their petition praying for an order admitting this will to probate. These petitions were heard by the probate court resulting in an order admitting the 1955 will to probate and denying probate to the instrument dated December 10, 1956.

Upon appeal to the circuit court, the cause, by stipulation of the parties, was submitted to the court for determination and decision upon the record made in the Probate Court. The circuit court held that the instrument dated March 16, 1955, should not be admitted to probate as the will of Ottylie Briick as it was thereafter revoked by her will of December 10, 1956, and that her later will should be admitted to probate. The circuit court remanded the cause to the probate court with directions to enter such an order.

78

To reverse this order of the circuit court Otto Briick, Jr. appeals.

The record discloses that Otto Briick, Sr., at the time of the execution of the joint will in 1955 was past eighty years of age and his wife a few years younger. They had been married many years and were the parents of six children, four sons and two daughters, all adults and no one was under any disability. All the children are beneficiaries under the provisions of each will. In the will of March 16, 1955, the name Briick was spelled Bruck. At the time each will was executed all the statutory requirements were complied with.

Upon this hearing James J. Ley testified that he was a practicing lawyer living in Joliet and was acquainted with Mr. and Mrs. Briick and had represented them as their attorney; that Mr. Briick conducted a meat market in the City of Joliet for many years but at the time the 1955 will was prepared he had retired and was living on a farm near Lockport. Mr. Ley further testified that he had prepared many wills in the course of his practice and had drawn a joint will for Mr. and Mrs. Briick dated May 24, 1947, a copy of which he had retained in his files and which he produced upon this hearing. Mr. Ley further testified that he prepared the will dated March 16, 1955, and that its provisions were essentially the same as the 1947 will; that both Mr. and Mrs. Briick read the 1955 will and that he read it to them, explained the paragraphs as he did so and before he signed as a witness thereto he asked them if they declared this to be their last will and testament and they both answered in the affirmative and stated that was the way they wanted it. Mr. Ley further testified that at the time the 1955 will was prepared and executed no other documents or instruments were prepared or executed by either Mr. or Mrs. Briick. The other witness to the 1955 will

79

was John J. Wellnitz, who predeceased Mrs. Briick, and the only other witness who testified upon this hearing on behalf of appellant was a deputy probate clerk who identified the signature of Mr. Wellnitz.

Albert H. Krusemark was called as a witness for appellees and testified that he was a practicing lawyer in Joliet and that about December 5, 1956, Mrs. Briick came to his office to discuss her estate and her will; that she advised him that she and her deceased husband had previously executed a will and gave Mr. Krusemark a copy thereof and stated she desired to make some changes in that will. Mr. Krusemark then testified that he inquired of her what had been done with the joint will and she said she thought it was filed in the probate court. As abstracted this witness then testified: "I asked her whether or not she had ever signed any contract with her husband at that time or prior to the joint and mutual will that would be binding on her. She said 'No, no such contract.' I asked her: 'Did you ever agree that was to be the will?' And in reply she said she never made any agreement but that Otto (her husband) went to the law office and told him (presumably Mr. Ley) what he wanted and it was fixed up that way." Mr. Krusemark further testified that Mrs. Briick told him that her husband had been the boss in their family and what he said held. "I went along. We talked it over. His wishes were my wishes and he was the boss."

Mr. Krusemark then testified that upon this occasion he asked Mrs. Briick why she wanted to change the former will and that Mrs. Briick stated that she felt the property was worth more than she then realized and that the daughters were not getting as much as they should under the old will. Mr. Krusemark then asked her if she wanted to revoke the old will and she said she did, that she didn't want to be bound by it

80

and that she did not understand she could not change it. On cross-examination Mr. Krusemark stated that the first will was filed but that nothing was done to have it admitted to probate; that Mrs. Briick took no benefits under the will as the property was held by her and her husband in joint tenancy and as surviving joint tenant she could have deeded the property to anyone.

Lucille Miller and Ruthe Blood, secretaries in the office of Mr. Krusemark and attesting witnesses, with Mr. Krusemark, to the 1956 will of Mrs. Briick each testified on behalf of appellees. These witnesses corroborated the testimony of Mr. Krusemark to the effect that Mrs. Briick stated that she did not feel that the former will was binding on her and that she had no agreement that she would never change it.

The jointly executed will dated March 16, 1955, omitting the attestation clause, is as follows:

"Last Will and Testament.

"Know all men by these presents, that we, OTTO BRUCK, and OTTYLIE BRUCK, wife of OTTO BRUCK, being of sound and disposing mind and memory, and desirous of disposing of our wordly estate after our deaths, respectively, do make, publish and declare this to be our Last Will and Testament, hereby revoking all Wills and Codicils by us, or either of us at any time heretofore made.

"FIRST: It is our wish that all our just debts, joint or several, together with funeral expenses, be paid after our deaths, respectively, as soon as possible, by our Executors, hereinafter named.

"SECOND: We give, devise and bequeath to each other, respectively all real, personal or mixed property that we may possess at the time of the death of each,

81

his or her part, and severally hereby bequeath and devise said property of the one of us, who may die first to the survivor thereof.

"THIRD: After the decease of both of us, we bequeath and devise all of said property, we or either, may own at death, in the following manner:

"FOURTH: After the death of both of us, we give, devise and bequeath to Herbert Bruck, Eugene Bruck and Otto Bruck, Jr., the property known as the North Chicago Street property, (describing it) and also the property known as the Scott Street property (describing it) with the proviso, that in the event either one of my above named sons are dissatisfied with the property, then in that event the other son or sons will pay to the one that is dissatisfied, the sum of $8,000.00 and he will forfeit all right, title or interest in the said property; that the said Herbert Bruck, Eugene Bruck and Otto Bruck Jr., pay the sum of $4,000.00 to Helen Walter and that they pay the sum of $4,000.00 to Ella Bruck; we direct that said above designated amounts to be paid by the said Herbert Bruck, Eugene Bruck and Otto Bruck, Jr., from said above described property within 6 months after the death of both of us, and the said above designated amounts are to be a lien upon the above described real estate until paid.

"FIFTH: We give, devise and bequeath, after the death of both of us, to Bruno Bruck, and his wife, Mary Bruck, the farm consisting of 40.8 acres, (describing it) and also all the farm machinery and fixtures, and the said Bruno Bruck and his wife, Mary Bruck, are to pay to Ella Bruck, the sum of $2,000.00 and are to pay to Helen Walter the sum of $2,000.00 and we direct that the above designated amounts to be paid by the said Bruno Bruck and Mary Bruck, from said above described property, within one (1)

year after the death of both of us, and the said above designated amounts are to be a lien upon the said above described real estate until paid.

"SIXTH: We give and bequeath all the household goods and furnishings to our daughter, Helen Walter, and we give and bequeath to our daughter, Ella Bruck, the automobile that is on the premises at the time of our death.

"SEVENTH: We give and bequeath all the livestock that we own at the time of our death, to Herbert Bruck, Eugene Bruck, and Otto Bruck, Jr., to be divided among them, but it is our wish and desire that the livestock be appraised and will be divided according to the existing market value at the time of our death.

"EIGHTH: We give and bequeath all the cash that we have in the bank at the time of our death to Bruno Bruck, Helen Walter and Ella Bruck, share and share alike.

"NINTH: We wish to make this statement in our Last Will and Testament, that the two-16 horsepower electric motors; one 7½ horsepower electric motor, and two glass display meat counters that are in storage on the farm belong to Herbert Bruck, Eugene Bruck and Otto Bruck, Jr., as their property.

"LASTLY, we nominate and appoint Otto Bruck, Jr., and Helen Walter, Executors of this our Last Will and Testament, to act without security of bond, except their own personal bond.

"This is our Will consisting of Three (3) pages, and we have read and approved same.

"IN TESTIMONY WHEREOF, we have to this our Last Will and Testament, subscribed our names and set our seals this 16th day of March, A.D. 1955.

/s/ Otto Bruck, Sr. (SEAL)
/s/ OTTYLIE BRUCK" (SEAL)

83

The will of Ottylie Briick dated December 10, 1956, omitting her signature and the attestation clause is as follows:

"The Last Will and Testament of Ottylie Briick of Joliet, County of Will, State of Illinois.

"I, OTTYLIE BRIICK, of Joliet, County of Will and State of Illinois, being of sound and disposing mind and memory, and not acting under duress, menace, fraud or undue influence of any person whomsoever, and desiring to make disposition of my entire estate, both real and personal, which I wish to have take effect at my death, do hereby make, publish and declare this to be my Last Will and Testament, hereby revoking all former wills and testamentary disposition heretofore at any time made by me, and hereby specifically revoking the former will executed by myself and my husband, OTTO BRIICK, dated March 16, A.D. 1955, said will not having been made in accordance with any contract or agreement between my husband and myself as to its terms or as to its binding effect.

"FIRST: I order and direct my executors hereinafter named to pay all my just debts and funeral expenses as soon after my death as practicable.

"SECOND: I give, devise and bequeath to Herbert Briick, Eugene Briick and Otto Briick Jr. my real estate located on North Chicago Street. (Here follows a description of this property and a direction that the named sons should pay to each of her named daughters $10,000.00 within six months after the date of testator's death and making said amounts a lien upon the described premises).

"THIRD: I give, devise and bequeath to Bruno Briick and his wife, Mary Briick, or to the survivor of them the farm consisting of 40.88 acres in Section 31, Township 36, Range 11, East of the 3rd P.M. also

84

known as Lot 4, in Homer Township, Will County, Illinois.

"FOURTH: I give, devise and bequeath all the cash that I may have in the bank at the time of my death, together with all the rest and residue of my property, both real, personal and mixed, wheresoever situated and of whatsoever composed to Bruno Briick, Helen Walter and Ella Briick, equally share and share alike.

"LASTLY: I hereby nominate and appoint Bruno Briick and his wife, Mary Briick as executors of this, my last will and testament, and I direct that no bond be required of them for the performance of any of their duties as such executors.

"In Witness Whereof, I have hereunto set my hand and seal to this, my last will and testament, consisting of four typewritten pages, including the following page, and for purposes of identification have signed my name on the bottom of the two preceding pages hereof, on this 10th day of December, A.D. 1956."

Counsel for appellant insists that the 1955 will is clearly the joint and mutual will of Otto Briick, Sr. and his wife, Ottylie Briick; that being a joint and mutual will no proof of a contract is necessary to sustain it as such, aliunde the will itself. Counsel argue that this will was under seal; that a seal imports a consideration; that this will contained reciprocal provisions for one another and upon the death of both testators then for their children; that a will containing such provisions could not have been executed by the parties without some previous agreement and understanding and therefore, concludes counsel, the will not having been revoked during the lifetime of the husband it became irrevocable by his surviving wife and her attempt to revoke it, by making a separate will after his death, must fail.

Counsel for appellees insist that the instrument of March 16, 1955, is not the joint and mutual will of

85

Otto Briick, Sr. and his wife, Ottylie Briick; that in order for it to be so held it must appear that it was executed pursuant to a contract or agreement between its makers; that such an agreement or contract cannot be inferred from the instrument itself and that the evidence is that the will was not executed pursuant to any contract or agreement between Mr. and Mrs. Briick. Therefore, concludes counsel, it was revocable and was revoked as the will of Ottylie Briick, by the later will which she executed on December 10, 1956.

Counsel for both appellant and appellees call our attention to Frazier v. Patterson, 243 Ill. 80, 90 N. E. 216, 27 L. R. A. (N. S.) 508, wherein it was held that the joint and mutual will of Mr. and Mrs. James was not revoked by a subsequent will executed by Mrs. James eleven years after the death of her husband. In the course of its opinion the court stated that the leading case in England on joint and mutual wills was Dufour v. Pereira, 1 Dick. 419; that the Dufour case held that such wills constitute a mutual contract between the parties which could not be revoked by the survivor after the death of one of the testators; that the theory upon which such a holding is based is that the testator who dies first has carried his part of the contract into execution and in such cases the courts will not permit the other party to afterwards break the contract. The court then stated that the only question presented for determination was: "Does the joint will, itself, on its face, sufficiently prove a compact or agreement to make a will mutually disposing of their property each for and in consideration of the will of the other?" This question was answered in the affirmative. And the court stated that the fact that the testators made such a will was satisfactory proof that it was done in accordance with their mutual compact to dispose of their property in the manner they did.

86

In Curry v. Cotton, 356 Ill. 538 it appeared that on August 10, 1928, Nora Fowler Curry and Stephen S. Curry executed their joint will by the provisions of which they bequeathed, each to the other, all real and personal property owned by either at the time of the death of either, the surviving testator to become beneficiary under the will, to all real and personal property of the deceased testator. On August 10, 1931, Stephen S. Curry executed another will and on August 31, 1931, died. Subsequently the joint will of 1928 was admitted to probate by the probate court of Vermillion County and no appeal was prosecuted from that order. The probate court refused probate of the will of Stephen S. Curry dated August 10, 1931, but upon appeal to the circuit court that court admitted to probate the 1931 will as the last will of Stephen S. Curry.

Thereupon Nora Fowler Curry, widow of Stephen S. Curry, and certain beneficiaries under the joint will of 1928 filed their complaint in the circuit court praying for a decree adjudging the joint instrument to be an enforcible contract between the parties thereto, that the property which Stephen S. Curry owned at the time be declared to be vested in plaintiffs and that the later purported will of Curry be held void. In affirming the decree of the chancellor which granted the relief prayed the Supreme Court stated that a joint will may be revocable during the joint lives of the makers upon notice by one testator to the other, but such will becomes irrevocable after the death of one of the makers if the survivor accepts any of the benefits made for him by the will. The court then said that mutual promises of the husband and wife are sufficient consideration to support an agreement to make a joint will with reciprocal provisions and that the joint will executed by Mr. and Mrs. Curry was the result of a contract theretofore agreed upon by them and that such contract was written into the

87

will and was clearly apparent from the instrument itself.

In Jacoby v. Jacoby, 342 Ill. App. 277, William L. Jacoby, Jr. filed his complaint against his mother, Laura Jacoby, in which he sought, among other things, an injunction to prevent his mother from revoking a will executed on April 2, 1923, by his mother and father, William L. Jacoby, Sr. Under the provisions of this will plaintiff would have been entitled to receive a third of the entire estate of the parties. The father died in 1930 and on June 19, 1945, Mrs. Jacoby made a new will. It was the contention of the plaintiff that the joint will of his father and mother was executed pursuant to a contract and became irrevocable after the death of William L. Jacoby, Sr. The trial court, after hearing the evidence covering the circumstances up to, and at the time of the execution of the will as well as the circumstances which prompted Laura Jacoby, the mother, to make the will of June 19, 1945, concluded that there was no contract to execute the joint will of 1923, and therefore it could be revoked and the complaint was dismissed.

This court in an exhaustive opinion stated that the sole issue presented by the record was whether the will of William L. Jacoby, Sr. and Laura Jacoby was executed pursuant to a contract and became irrevocable after the death of William L. Jacoby, Sr. The court stated that the plaintiff did not establish the existence of an express contract dehors the will but had relied principally upon the case of Frazier v. Patterson, 243 Ill. 80, supra, where it was held that the joint will there involved, was per se a contract and irrevocable.

The opinion set forth the differences in the Frazier and Jacoby wills, stated that it was apparent from the circumstances and the conduct of the parties that

88

the provisions in the Jacoby will were combined in a joint instrument for convenience and that to construe the will itself as a contract, would be a distortion of the avowed intention of the testators.

In commenting upon the Frazier case this court said: (pp. 287-8) "It is clear that the decision in the Frazier case, predicated on a materially different will, and without any evidence of the circumstances of its execution, or the intention of the testators cannot be deemed determinative of the rights of the plaintiff herein. The dictum of the court, moreover that it is not possible that a joint will could be executed without some previous understanding or agreement, when considered apart from the context of the opinion, is somewhat broad and inconsistent with the general statements of law made by the court. Admittedly, there would be previous knowledge of the provisions of the joint will by the parties, but this knowledge and the execution of the will as one document cannot be deemed conclusive that the devises were made in consideration of each other and constituted a binding contract."

The Jacoby case quoted from the dissenting opinion in the Curry case which stated: "Joint and mutual or reciprocal wills, especially when executed by husbands and wives usually are based upon mutual trust and confidence, but that fact alone neither makes the instrument a contract, nor destroys its ambulatory character." The court then quoted from Page on Wills, sec. 69, wherein it is stated; "If the joint or mutual will is not made in pursuance of any contract, the right of the testator to revoke it is beyond question. If made in pursuance of a contract between testators, such will stands on the same footing as any will made in pursuance of a contract, not a joint or mutual will, that is, the will itself may be revoked, but the con-

tract in pursuance of which the will was made, may be enforced in an action at law for damages or a suit in equity . . . ."

In re Estate of Edwards, 3 Ill.2d 116, the lower court was confronted with two duly executed wills, just as the lower court in the instant case, and was required to determine which will was entitled to probate. It appeared in that case that W. F. Edwards and his wife, Anna B. Edwards, executed in 1940 their joint will. Mrs. Edwards died in 1943. In 1952 Mr. Edwards executed his will. In the course of its opinion the Supreme Court stated (p. 119) that normally, the later dated instrument, by its express provisions revoking all former wills, and also by operation of law, would revoke the prior will. (Ill. Rev. Stat. 1949, Chap. 3, sec. 46, par. 197.)

The court said that Frazier v. Patterson, 243 Ill. 80, is the leading case in this state in support of the proposition that a joint will of a husband and wife with reciprocal provisions is presumed to be executed pursuant to a contract and therefore irrevocable upon the death of one of the testators. After quoting from the Frazier case the court then said: (p. 121) "The rule in favor of the presumption announced in the Frazier case has not received unqualified approval in later decisions." The court cited Curry v. Cotton, 356 Ill. 538, stating that in that case the court did not rely exclusively upon the presumption that a joint will of husband and wife with reciprocal provisions was executed pursuant to an agreement but said that such contract was clearly apparent from the four corners of the will.

The Edwards case also cited Jacoby v. Jacoby, 342 Ill. App. 277, which distinguished the will involved in the Jacoby case from that involved in the Frazier case by pointing out that the Frazier will used the phrase, "declare this and none other to be

90

the testator's last Will," as significant in suggesting a contract. A further distinction was also made in that each testator in the Frazier case gave the other a life estate, whereas in the Jacoby case the testators gave each other a gift simpliciter. Each case, said the court, must be decided on its own facts and merits; that the quest for a common denominator among the authorities discloses a tendency to favor a presumption that joint and mutual wills, particularly between husband and wife are executed, pursuant to a contract or agreement between testators and stated that in the Edwards case the jointly executed will recited that Myrtle Blue had lived with the testators and cared for them for more than ten years and that they intended her to have everything upon the death of the survivor. The court held that this recital was a declaration of intention of the testators to provide for Myrtle Blue for the care she had rendered them for several years and was indicative of a predesigned arrangement between the testators and concluded that the instrument was the joint and mutual will of W. F. Edwards and Anna B. Edwards, and was irrevocable.

In Bonczkowski v. Kucharski, 13 Ill.2d 443, the litigation was based upon the joint will of Anthony and Mary Zinucki, husband and wife. The will appears in full in the opinion and need not be set forth here. The title to the real estate involved in the controversy became vested in Mr. and Mrs. Zinucki, as joint tenants, in 1943 and their joint will was executed in 1952. By its provisions the makers of the will did not purport to create or give any separate estate to either testator at the death of the other but suspended the disposition of all their property until the death of the survivor. The will treated all the property of the makers as a joint fund and devised it to the child or children of each maker by a previous marriage. The court held that the instrument was not a valid will

of either of the makers and could not be given any validity as a joint will. The court also held that insofar as the will sought to devise real estate owned in joint tenancy it was invalid inasmuch as a devise, by a joint tenant, who is survived by another joint tenant, is not effective to pass any title to the real estate held in joint tenancy for the reason that the title immediately passes upon the death of one joint tenant to the survivor by operation of law. (Eckardt v. Osborne, 338 Ill. 611, and Klajbor v. Klajbor, 406 Ill. 513.)

In the Bonczkowski case it appeared that Anthony Zinucki died on March 20, 1954, and a month later Mary Zinucki, his widow, conveyed the real estate in controversy to her daughter and her daughter's husband Anna and Adam Bonczkowski, as joint tenants. In the course of its opinion the court stated that at one time there was a tendency to favor a presumption that a joint will, particularly between a husband and wife, was executed pursuant to a contract or agreement between the testators but that recently our courts have expressed their reluctance to permit the fact of joint execution alone to be conclusive and have looked to the provisions of the will itself and to other proof for a contract. (In re. Edwards, 3 Ill.2d 116.)

The court then considered the circumstances surrounding Mr. and Mrs. Zinucki at the time the joint instrument was executed, commented on the fact that each had a child or children by a former marriage and stated that their plainly expressed intent was that each would make the children of the other a beneficiary. The court held the instrument invalid as a joint will but sustained it as a contract enforcible in equity, stating that the intent of the makers was manifested by the fact that the real property referred to in the joint instrument was owned by them as joint tenants and that both of them were presumed to have

known that title would pass to the survivor who could then dispose of it as he or she saw fit; that they divested themselves of that right and sought to bind and assure themselves that the survivor would cause their respective children to be the ultimate recipients of the property in equal shares, one-half to the child of the wife and one-half to the children of the husband.

In answer to the contention that the instrument was not enforcible as a contract because there was a lack of consideration and because neither maker received any benefits from the other under its provisions, the court cited In re Estate of Edwards, 3 Ill.2d 116, 123, supra, which held that where a joint will is executed pursuant to a contract, it is not necessary that the survivor receive material gain upon the death of the other testator, since he has already derived the benefit from the consideration given by the deceased to bind the agreement, thus making the contract executed as to the deceased testator and thereafter irrevocable by the other. As for the claim that the contract lacked consideration the court said that where the agreement is that each party will dispose of his property in a certain way, the mutual promises are sufficient consideration to support the agreement. (Curry v. Cotton, 356 Ill. 538, 547, and Peck v. Drennan, 411 Ill. 31.)

The court in the Bonczkowski case then stated that the instrument itself indicated a predesigned agreement and arrangement between the parties because the makers treated the property of each whether jointly or severally owned, as a joint fund which should be shared by the children of each and that such pooling of interests and then jointly providing for the disposal of the whole fund gave every indication of a mutual compact. The court then said that when these features were added to statements testified to as having

93

been made by the widow shortly after her husband's death and other evidence relating to the circumstances of the parties and their property, the chancellor properly found that the joint instrument was contractual in character and correctly held that the deed executed by the widow to her children after the death of her husband was in violation of her contractual obligation and was of no force or effect. The basis for so holding is that equity holds that the survivor is estopped to dispose of his or her property otherwise than as contemplated in the agreement.

It is said in 57 Am. Jur. title Wills, sec. 690, that according to sound theory, one of two testators who have made wills which are reciprocal in the circumstances that each will makes provision for the testator of the other will, may revoke his will even after the death of the other testator notwithstanding the wills were drawn and executed pursuant to a contract. "This does not mean," continues the author, "that the obligation of the contract is escaped by revoking the will. It means that on the issue of will or no will with which the probate court is concerned, a will is to be regarded as revocable notwithstanding it was executed pursuant to contract. The question whether a revocation constitutes a breach of contract for which relief may be had in law or in equity is of no concern, strictly speaking, to a probate court. Therefore, a later will which revokes a prior will which was jointly executed or one of two separate wills containing reciprocal bequests, is admissible to probate, though the testator violated his contract by executing it; and a jointly executed will or one of two separate wills which are reciprocal in their provisions is not admissible to probate as the will of one of the testators who revoked it, notwithstanding the revocation was a breach of contract. Concisely stated it is the con-

tract and not the joint will which is irrevocable after the death of a party."

The author of the annotation in 169 A. L. R. 24, states that a later will which revokes a prior jointly executed will, is admissible to probate notwithstanding the revocation was a breach of contract. Among the cases cited to support this statement is In re Rolls' Estate, 193 Cal. 594, 226 P. 608. It appeared in that case that John Rolls and Leah Rolls, husband and wife, executed a conjoint and mutual will in 1919. Thereafter the husband died and in 1920 Leah Rolls executed her will, revoking as to herself, the joint will and made a different disposition of the estate described in the joint will. The court in its opinion referred to section 1279 of the civil code of California which provides that a conjoint or mutual will is valid, but may be revoked by any of the testators in like manner with any other will and held that the joint will could not be probated as the will of the testatrix who had revoked it. In the course of its opinion the court said: "The joint and several will, so far as it purported to be the will of Leah Rolls, was denied probate because of the execution of the later will revoking the first. It is not claimed that Leah Rolls was wanting in testamentary capacity, or that her will does not conform fully to all legal requirements. The grounds of objection are that she agreed and contracted with her husband not to execute a will that would in any wise change the disposition of the property made by the conjoint will. Whatever there may be of merit in this claim, we are satisfied that the question cannot be litigated in a probate court, but that relief in such cases must be sought in a court of equity. The remedy of a person injured by the violation of a contract to make testamentary provision for another must be pursued in a court of

equity and not in a court of probate. . . . Joint dispositions of property under a testamentary instrument, as stated by the law text-writers and supported by many decisions, are, therefore, though irrevocable in equity as a compact, revocable as a will by either testator in the usual manner so far as relates to his own disposition."

In Frese v. Meyer, 392 Ill. 59, at page 65, it is said: "In mutual wills, which deprive the parties of the right to revoke and are supposed to be established by contract, the compact between the parties must be proved by clear and satisfactory evidence." The court then quoted from Curry v. Cotton, 356 Ill. 538, where it was said: (page 546) "In the case of mutual wills, the wills are not, generally, of themselves sufficient evidence of a contract, and proof of the contract and the consideration to support it must be made aliunde the wills." The court then in the Frese case went on to say that the most that could be urged from the proof made by plaintiffs was that Mr. and Mrs. Hahn on the same day made wills in which each was the beneficiary in fee, if living, and in case of death of the spouse each made the children of Lena Hahn beneficiary of the residue, and that there was absolutely nothing to indicate there was any agreement that either of the parties would not, at any time, have the right of revocation.

In The Peoria Humane Society v. McMurtrie, 229 Ill. 519, it appeared that Mary W. Rouse and her son, Harry G. Rouse, executed their joint and mutual or reciprocal will. It provided that the survivor was to inherit all of the property of the other, but if both should die, or "if when both shall be dead if no individual will has been made, then the property of both" shall be disposed of as provided in a subsequent clause. Subsequently Harry G. Rouse married and made an individual will which was probated after his

96

death. Thereafter his mother died and the joint will was presented for probate as her will. In affirming the judgment of the Circuit Court which denied probate, the Supreme Court said: (page 521) "There is no legal objection to uniting the wills of two persons in a single instrument if such instrument can be given effect, on the death of either, as the will of that one. (Gerbrich v. Freitag, 213 Ill. 552.) A joint will contained in a single instrument is the will of each of the makers, and at the death of one may be probated as his will and be again probated at the death of the other as the will of the latter. A joint, mutual or reciprocal will, like any other, is ambulatory during the lives of the makers, and it may be revoked by either at any time before his death. The right of revocation cannot be doubted, at least as to either maker who has taken no benefit or advantage under the will. And that was the case here. So far as the instrument was the will of Harry G. Rouse it was revoked by his subsequent marriage, and he also made an individual will, which could have operated as a revocation." It is true that the provisions of the joint will of Mary Rouse and her son, Harry G. Rouse, expressly recognized the right of either to make an individual will. The Court however, commented on the fact that a joint will, like any other will, is revocable by either maker who takes no benefit or advantage under the joint will.

In Jordan v. McGrew, 400 Ill. 275, mutual and reciprocal wills of Anthony and Amanda Myers were involved. At page 279 of the opinion the court said: "Mutual wills generally are not of themselves sufficient evidence of a contract, and proof of the contract and the consideration to support it must be made aliunde. To render mutual wills operative as being made one in consideration of the other, and for such wills to become irrevocable as joint wills

97

made under contract, the contract must be certain and definite in all its parts, it must be mutual, founded upon an adequate consideration, and established by the clearest and most convincing evidence."

The decision of our Supreme Court in Frazier v. Patterson, 243 Ill. 80, 90 N. E. 216, 27 L. R. A. (N. S.) 508, supra, was based on Dufour v. Pereira, the leading English case on joint and mutual wills. In that English case it was said: "Though a will is always revocable and the last must always be the testators will, yet a man may so bind his assets by agreement that his will shall be a trustee for performance of his agreement. . . . There is no difference between promising to make a will in such a form and making his will with a promise not to revoke. This court does not set aside the will, but makes the devisee, heir or executor, trustee to perform the contract."

In Rastetter v. Hoenninger, 214 N. Y. 66, 108 N. E. 210, the court cited the Dufour case, supra, upon which our court in Frazier v. Patterson, 243 Ill. 80, supra, based its holding. The New York court however, declined to hold that the mere fact of a conjoint reciprocal testimonial disposition of property established a contract not to revoke and said that a will as a will is revocable at the pleasure of the maker but as a contract is enforcible in equity if supported by adequate consideration.

In Menke v. Duwe, 117 Kan. 207, 230 P. 1065, one of the questions presented was whether the joint and mutual will executed by Gottlieb and Annie Menke, husband and wife, evidenced a contract between the parties which precluded Mrs. Menke from revoking it as her will. In the course of its opinion the court said that the law upon this subject had been in a state of confusion since July 18, 1769, when Lord Chancellor Camden pronounced judgment in the case of Dufour v. Pereira, 1 Dickens 419. The Kansas Supreme Court

in its opinion set forth the material portions of the report of the Dufour case, referred to later English cases and quoted from Frazier v. Patterson, 243 Ill. 80, supra, stating that that case held that a mutual will, jointly signed by a husband and wife, giving to each a life estate with remainder-over, is its own convincing proof that it was made in accordance with a contract to dispose of the property as stated in the will. The Kansas Court stated that this assertion lay beyond the boundary of the court's information and that it was possible for persons to execute the same instrument as their wills without previous understanding or agreement and that that was just what occurred in the Menke case. The court went on to say that disposition of property by will is a proper subject of contract; that if the contract be in substance not to revoke the will, the will, nevertheless is revocable without notice to anybody; that if revoked, it cannot then be probated as the will of the person revoking it, and, if the revocation be by means of a second will, the second will is probatable as the will of the testator. "The revocation however," continued the court, "breaches the contract and the contract is enforceable in equity against the estate of the testator. A single instrument may have a double aspect—a will contractual in character or a contract testamentary in character. As a will it is revocable. As a contract it is enforceable, if broken by revocation as a will." In concluding its opinion the court said: "Turning to the extrinsic evidence, nonexistence of a contract making revocation by Mrs. Menke after her husband's death wrongful was proved both by plaintiff and by defendants, and the case stands as a warning against dogmatic judicial declaration that a certain form necessarily expresses a certain reality."

It has been stated that to make an irrevocable will would be the creation of an instrument unknown to

the law. Under the authorities herein referred to and cited, the will of Mrs. Briick executed after her husband's death, effectively revoked her previous joint will and the judgment of the Circuit Court directing that her will of December 16, 1956, be admitted to probate should be affirmed. Whether she agreed and contracted with her husband not to change the disposition of the property made by the provisions of the joint will of March 16, 1955, could not be litigated in the probate court of Will County.

In order to hold that the joint will was irrevocable it must appear that Mr. and Mrs. Briick agreed that the disposition they made in that instrument could not be revoked by one without the consent of the other. If that was their agreement, it should appear either in the provisions of the joint will itself, or some reference to such an arrangement should have been made in that will or evidence should have been produced upon this hearing which disclosed such an arrangement. The language employed in the joint will does not indicate any predesigned agreement or arrangement nor does it indicate that it was executed pursuant to any contract, compact or agreement. This will does not disclose on its face that the devises or bequests were made one in consideration of the other and the evidence is that nothing was said about it being irrevocable at the time it was executed and no other instrument or writing was prepared when the joint will was executed or at any subsequent time.

The joint will in this case is distinguishable from the provisions of all the other wills referred to herein where the courts have determined that they were irrevocable. There is no declaration of intention in this case as there was in the Edwards case, supra. Here, as in the Jacoby case, supra, it is apparent that the testamentary provisions of the joint will of Mr. and Mrs. Briick were combined in a joint instru-

100

ment for convenience and to construe this will as a contract has no support either from the will itself or from anything appearing in this record. Of course, as said in the Jacoby case, both Mr. and Mrs. Briick are presumed to know the contents of this joint will, but that knowledge alone cannot be deemed conclusive that the devises were made in consideration of each other and that the instrument is a binding compact. There is nothing in this joint will which makes this instrument a contract or which destroys its ambulatory character as a will which may be revoked at the pleasure of either testator at any time.

The joint will of March 16, 1955, was never sought to be probated as the will of Otto Briick, Sr. The reason is apparent. Ottylie Briick took nothing from her deceased husband by virtue of the provisions of that will. The title to the property Mrs. Briick disposed of by her will of December 10, 1956, was not acquired by her by the will of her deceased husband but because it was held by her and her husband in joint tenancy and being so held, the title she acquired upon the death of her husband was superior to any claim of hers as devisee or legatee of her deceased co-tenant.

The judgment order appealed from is affirmed.

Judgment order affirmed.

McNEAL, P. J. and SPIVEY, J., concur.