(No. 39298.—

ALVIN HELMS *et al.,* Appellees, *vs.* ELIAS W. DARMSTATTER *et al.,* Appellants.

*Opinion filed March 24, 1966.*

F. E. MERRILLS, of Belleville, for appellants.

KASSLY, WEIHL, CARR & BONE, of East St. Louis, (REX CARR, of counsel,) for appellees.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

George Lortz and his wife, Lena Lortz, on September 17, 1947, jointly executed a will giving their property after the payment of certain expenses to the surviving testator, but providing further that after the death of that survivor

the property was to be sold and the proceeds distributed by specific monetary gifts to designated relatives of both. George Lortz died March 13, 1948, and the will was admitted to probate. On April 20, 1951, Lena Lortz executed a codicil which provided that certain bequests to her designated nephews and a niece under the joint will be increased from $500 to $1,000 and bequeathed to her nephew, Elias W. Darmstatter, certain preferred stock as an additional gift. The codicil specifically provided that "in all other respects I hereby confirm my will made jointly with my husband, George Lortz, on September 17, 1947."

After Lena's death, and on December 9, 1959, the codicil was submitted for probate. The probate court refused to probate the codicil and the judgment of that court was affirmed by the appellate court on the ground that the codicil would have materially changed the joint will and since the surviving testator took property under that joint will she could not subsequently modify its terms. (*In re Will of Lortz,* 28 Ill. App. 2d 287.) This court granted leave to appeal and held that the inquiry in probate court is confined to whether the offered instrument is the last will of the decedent and executed according to the statutory requirements, free of fraud, forgery, compulsion and improper conduct. (See *In re Estate of Baughman,* 20 Ill.2d 593.) We further stated that whether a joint will was executed pursuant to an agreement not to revoke or is itself a contract not to revoke should be determined in a contract action or in a chancery proceeding and not by the probate court. The judgment of the appellate court was, therefore, reversed and the cause remanded to the probate court with directions to admit the codicil to probate. (*In re Will of Lortz,* 23 Ill.2d 344.) The mandate in that case issued in November, 1961, and the codicil to the will of Lena Lortz was admitted to probate on December 29, 1961.

The action in chancery with which we are now concerned was instituted on February 9, 1962, by 46 legatees

of the will of Lena Lortz against the executor of that will, Homer Lortz, and three other legatees. The plaintiffs sought to prevent the executor from paying certain increased bequests under the codicil to the four legatees named therein. The circuit court of St. Clair County granted the relief sought and ordered Homer Lortz, executor of the estate of Lena Lortz, deceased, to distribute the proceeds in the estate of Lena Lortz in accordance with the provisions of the joint will of George and Lena Lortz executed on the 17th day of September, 1947, and without regard to the codicil executed by Lena Lortz on the 20th day of April, 1951. From that decree defendants Elias W. Darmstatter and Ida May Skaer appealed to the Appellate Court of Illinois, Fifth District. That court affirmed the judgment of the circuit court of St. Clair County, (*Helms* v. *Darmstatter,* 56 Ill. App. 2d 176,) and we granted leave to appeal.

The defendants contended in the trial court and contend here that a contract to make a will cannot be inferred from the language of the so-called joint will; that joint tenancy properties passed directly to Lena Lortz by reason of the death of the co-tenant without reference to the joint will; that there was an implied contract on the part of George Lortz and his wife to pay Darmstatter for his advice and services; and that this action is barred by the Statute of Limitations. To properly pass upon these contentions, it is necessary to set forth certain provisions of the will involved, as follows:

"We, GEORGE LORTZ and LENA LORTZ, of the County of St. Clair and State of Illinois, being of sound mind and memory, do hereby make, publish and declare this is be our Joint Last Will and Testament, hereby revoking and making void all former wills by us or either of us at any time heretofore made.

\* \* \*

"FIFTH: We respectively hereby give, devise and bequeath, all the rest, residue and remainder of our property, both real and personal of whatsoever kind or nature, which we or either of us now own or may hereafter acquire and wherever located and which shall remain after the payment of all claims and bequests

against our respective estates, to the survivor of us, as his or her absolute property forever.

"SIXTH: After the death of the survivor of either of us or in case of the death of both of us at the same time, we respectively order and direct that the residue of our estates be merged into one Corpus, by reducing all of our property, both real and personal, into cash and for that purpose we respectively authorize our Executors to convert the same, by selling all our Real Estate and tangible property, within Two (2) years after our deaths, or the death of the survivor of us, and execute proper deeds to the purchasers thereof, and pay the expenses of evidences of title and the preparation of deeds and if necessary, in their judgment, employ a surveyor and legal counsel to protect the interest held by us at our deaths, and after all of our property, both real and personal, has been reduced and converted into cash and all the debts, claims, and charges against our estates, including taxes and costs of Administration have been paid in full, we hereby order and direct our Executors to pay out of the remainder of said Corpus, the sums of money hereinafter set forth, and we hereby give and bequeath, as follows:

\* \* \*

"SEVENTH: In case there still remains a surplus or residue in the Corpus of our estates after the legacies and bequests hereinbefore provided for and all other charges and expenses connected with the settlement of our estates have been paid out and satisfied, we hereby order and direct that such surplus or residue be divided among all of the legatees mentioned in this Will in the same proportion and at the same ratio, that the specific bequests hereinbefore made, bear to the remainder or residue of said Corpus."

By the other provisions of the will they directed the executors to pay all debts existing against "us or either of us," made bequests providing for the upkeep of the burial lots of the parents of both testators, and for the upkeep of their own burial lot, and named two executors of their joint will, one a relative of each testator. The total amount of the estates of George and Lena Lortz was more than $200,000, approximately $70,000 of which had been held in joint tenancy at the time of George's death.

The circuit court specifically found that on September 17, 1947, George and Lena Lortz entered into an agreement providing for the disposition of their several and joint estates upon the demise of each of them and upon the death

of the survivor of them; that the will was executed pursuant to the agreement with the intention that the relatives of each decedent were to take nearly equal shares of the several and joint estates of each decedent upon the death of them; that the will was a joint mutual and reciprocal will containing the terms and provisions of their agreement; that on March 13, 1948, when George Lortz died, his estate passed to Lena Lortz by virtue of the will and the joint tenancy provisions contained in some of the securities owned by George Lortz; that said agreement became binding upon Lena Lortz and she was estopped from disposing of their estate in any manner other than that set out in the agreement and will, George Lortz having performed his part of said agreement; that on April 20, 1951, Lena Lortz, contrary to the agreement and will, executed a codicil in which she materially changed the ultimate disposition of her estate, the estate of George Lortz and other joint tenancies; that the codicil is null and void; and that the executor of the estate of Lena Lortz is bound by the agreement and will without reference to the codicil. The court entered a decree of specific performance of the agreement and will of September 17, 1947, without reference to the codicil. Other findings of the court were that the affirmative defenses and counterclaim filed by Elias Darmstatter for services rendered to the testators during their lifetime were without merit, and that the complaint was not barred by the Statute of Limitations.

We turn first to the contention that the codicil to the joint will was valid because the evidence was insufficient to show that the will was executed pursuant to a contract between the testators. In analyzing Illinois cases with reference to this contention the defendants state that this case presents an excellent opportunity for this court to modify several of its earlier decisions. However, we adhere to our decision in *Jusko* v. *Grigas*, 26 Ill.2d 92, in which it was said: "A joint and mutual will may be executed pursuant

to a contract or may itself constitute a contract, which, after the death of one maker, will, under appropriate circumstances, be enforced by a court of equity. * * * Joint wills executed by husband and wife give rise to the presumption that they are the result of mutual trust and confidence."

In common with the wills heretofore declared by this court to be joint and mutual, the Lortz will was executed by both testators, and purported to dispose of property owned jointly, in common, and severally by them. Each first made a disposition of his or her entire estate in favor of the other. After their deaths a scheme or design to divide the estate equally between the families of each testator is shown by the provision that the 18 relatives of George received approximately the same amount as the 19 relatives of Lena. A foster daughter reared by them was provided for; the upkeep of the burial lots of both was provided for; each named a co-executor to the joint will; the language throughout the will is "we give"—"we bequeath;" the estates of each were merged into one common *corpus* and the dispositions were made by both rather than by each of them individually.

Despite these common features often found in joint and mutual wills, defendants point out that in the fifth clause of the will the testators bequeathed their estate to the survivor of the other as his or her "absolute" property forever and argue that this justifies the increased gifts made by Lena in the codicil. However, the sixth clause of the will directs that the testators' entire estate be merged into a common *corpus* and distributed and treated as one estate for the benefit of their respective relatives and their foster daughter. The two clauses must be read together and we feel that the equal treatment of each side of the family is so clearly provided for that it would not be logical to consider that the testators intended to give the survivor the power to upset that scheme by a contrary testamentary disposition by using the one word "absolute". It may well be that they intended that the survivor should have the absolute right to use the

entire *corpus* for life, but only upon the condition that the property owned by the survivor upon his or her death would pass in accordance with the terms of the joint will.

A similar situation was involved in *Curry* v. *Cotton,* 356 Ill. 538. There the will did not limit the survivor to a life estate but the surviving testator agreed to bequeath all real and personal property in his or her possession at the time of death to certain legatees. In that case the court enforced the original joint will and did not allow a contrary testamentary disposition by the survivor.

We find that the evidence sustains the trial court's conclusion that the joint will of George and Lena Lortz was a valid contract and that the codicil is not effective to provide for a contrary disposition.

Defendants further contend that even though the will embodies a contract, that contract does not apply to the property held in joint tenancy because the title thereto did not pass to Lena Lortz by virtue of the will. Of course the entire will must be examined to ascertain the true intentions of the testators. In *Bonczkowski* v. *Kurcharski,* 13 Ill.2d 443, this court said:

"Turning to the instrument itself, the language of the third article is an indication of a predesigned agreement and arrangement, for, by it, the makers treated the property of each, whether jointly or severally owned, as a joint fund which should be shared by the children of each. Such a pooling of interests and then jointly providing for the disposal of the whole fund gives every indication of a mutual compact. Moreover, as was done in the *Edwards* case, significance may be attached to the action of the parties in labeling the instrument as a combined will and to the plural designations in the provision which stated 'we give, devise and bequeath * * * *our* property * * *.' (Emphasis supplied.) When these features are added to the other evidence relating to the circumstances of the parties and their property, it is our opinion that the chancellor was correct

in his finding that the joint instrument was contractual, and in holding that the deed from Mary Zmucki to appellants was in violation of the contract agreement."

Also in *Tontz v. Heath,* 20 Ill.2d 286, this court said: "The testators were husband and wife who made identical reciprocal provisions for each other in a single instrument; each gave up the right of absolute ownership of the real estate held in joint tenancy which would have followed upon the death of the other; William Kamp had children by a previous marriage, and the instrument appears to have been designed to insure that they would receive equal treatment with the children of the two testators; the property of both testators is treated as a common pool and the dispositions are made by both rather than by each of them individually. Each of these factors has been considered relevant in prior cases which determined that a joint and mutual will was executed pursuant to a contract. * * * The evidence sustains the trial court's conclusion that a contract existed in this case."

The fifth paragraph of the will herein devised and bequeathed all the rest, residue and remainder of their property, "both real and personal of whatsoever kind or nature, *which we or either of us now own or may hereafter acquire* * * *." (Emphasis added.) Looking at the language of the whole will we believe that the Lortzes intended to include their jointly owned property in the contract. The *Bonczkowski* and *Tontz* cases clearly establish that joint-tenancy property can properly be the subject of a contract set forth in a joint and mutual will. The rationale of these two cases, together with the language in this will, particularly in the fifth and sixth paragraphs, leads to the inescapable conclusion that the testators directed their executors to merge both estates into one *corpus* including the joint-tenancy property, reduce it to cash, and distribute to the legatees named. The makers of the will, although they may or may not have been aware of the legal niceties in-

volved in joint tenancies, treated their properties as a joint fund to be shared by their foster daughter and approximately equally by the beneficiaries of each side of the family.

As to the affirmative defenses and counterclaim filed by Elias Darmstatter for services rendered to the Lortzes during their lifetime, the circuit court found them to be without merit. Darmstatter's claim is based upon an implied contract on the part of the Lortzes to pay for his investment advice which he claims resulted in an appreciation of the estate to over $200,000 since 1936, and states that if he isn't paid, it will result in a "windfall" to the plaintiffs. Actually Darmstatter benefited from commissions on the purchase and sale of stock as advised by him. There is no proof in the record to justify holding that the preferred stock bequeathed to him by the codicil of Lena Lortz was in payment for services rendered commencing in 1936. The circuit court determined that there was insufficient proof to show any implied contract as claimed, and we concur in this view.

Finally, it is contended that this action was barred by the Statute of Limitations. Section 28 of the Limitations Act (Ill. Rev. Stat. 1961, chap. 83, par. 24e,) reads as follows: "Actions against the executors, administrators, heirs, devisees, and legatees of a deceased person to enforce a contract to make a will, shall be commenced within two years after the death of the deceased person unless letters testamentary or of administration are applied for on his estate within two years after his death, in which case the actions shall be commenced within and not after the time for presenting claims against estates of deceased persons as provided in the Probate Act and all existing and future amendments thereto."

We do not consider this limitation applicable to the present case. This proceeding is not one "to enforce a contract to make a will," but rather to prevent the illegal revocation of a will already admitted to probate. The attack is not

upon the original probate but upon the subsequent attempt to revoke the joint will by probating the codicil. (*Cf. Scham v. Besse*, 397 Ill. 309, 314.) Since the codicil was not admitted to probate until December 29, 1961, this action was timely filed on February 9, 1962.

The trial and appellate courts are, therefore, affirmed.

*Judgment affirmed.*