**In the Matter of the Estate of Mamie Weaver, Deceased. Lena Rucker, et al., Petitioners Below-Appellants, v. George K. Harris, Respondent Below-Appellee.**

Gen. No. 50,689.

First District, Second Division.

May 31, 1966.

Benjamin G. Clanton, of Chicago, for appellants.

Thomas M. Clarke, of Chicago, for appellee.

MR. PRESIDING JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from an order in the Circuit Court of Cook County, the Probate Division, whereby the alleged joint will of Archie Weaver and Mamie Weaver was refused probate and a subsequent will of Mamie Weaver was admitted to probate. The will was properly executed and witnessed by both parties.

The joint will recites that both are of sound mind and disposing memory, and

> "being mindful of the uncertainties of this frail and transitory existence, and being desirous of placing our worldly house of goods in order, do make, publish and declare the following to be our joint last

will and testament hereby revoking any and all prior wills made by us, either jointly or severally:

· · · · · ·

"7. In the event that our deaths be not simultaneous, I Archie L. Weaver above named hereby give, devise and bequeath to my very dear and faithful wife who has stood by my side with love and devotion thruout all of our happy years together all of my entire estate of every description whatsoever for the period of her natural life to use as she sees fit without restriction or limitation, and upon her death said unused portion I give, devise and bequeath share and share alike to my well-beloved daughters, Catherine Dixon, Helen Ford and Lena Rucker."

It is to be noted that Catherine Dixon, Helen Ford and Lena Rucker are the daughters of Archie L. Weaver, by a previous marriage.

██ Paragraph 9 of the will reads:

"9. I, Mamie Weaver, above named, in the event that my dear and faithful husband, Archie L. Weaver, should survive me, give, devise and bequeath to my dear and faithful husband, Archie L. Weaver, all of my estate, real personal and mixed for the period of his natural life, and at his death all of the estate as immediately above described I give, devise and bequeath in remainder to my step-daughters, Catherine Dixon, Helen Ford and Lina [sic] Rucker and to their hears [sic] forever share and share alike."

It is clear from these above quotations that it was the intention of the parties to make a joint will, and repeatedly declared it to be a joint will in the will itself. This joint declaration is sufficient to make a joint will.

██ The first question which we face is, is this document such a joint will that it cannot be revoked. The

courts in Illinois early described a joint will and what constitued one as far as revocability was concerned.

"When joint wills first came before the English courts they were held invalid. (Earl of Darlington v. Pulteney, 11 Cowp 260; Hobson v. Blackburn, 1 Add Ecc 277; Clayton v. Liverman, 2 Dev & B 558) Such was also the ruling of the earlier decisions of the courts of this country. In more modern times such wills are generally recognized by our courts. Gerbrich v. Freitag, 213 Ill 552; Frazier v. Patterson, supra; Lewis v. Scofield, 27 Conn 452, 68 Am Dec 404; Evans v. Smith, 28 Ga 98, 73 Am Dec 751, Carle v. Miles, 89 Kan 540, Ann Cas 1915—A, 363; In the Matter of Dietz, 50 NY 88.

". . . Frazier v. Patterson, supra, is one of the leading cases in this State on the subject of joint Wills. The case of Dufour v. Pereira, supra, was there reviewed by this court, and the doctrine announced on the subject of notice and revocation in the Dufour case was approved by this court. Buehrle v. Buehrle, 291 Ill 589, involved the question of mutual wills made pursuant to a contract. The court there held that the terms of the contract made the mutual wills of the parties their joint will, irrevocable by either without notice to the other, and cited Frazier v. Patterson in support of that holding. The rule announced in the Dufour case has received recognition and approval in Carmichael v. Carmichael, 72 Mich 76, 40 NW 176, Allen v. Boomer, 86 Wis 364, and Edson v. Parsons, 155 NY 555.

"The rule of law that a joint will is irrevocable without notice is particularly applicable in those instances where the joint will is that of the husband and wife. On account of the relationship of mutual trust and confidence imposed by such status, it may be presumed that the provisions made are induced

235

by the mutual love, respect for and faith which the parties have in each other. Neither should be permitted to violate such fiduciary relation by publishing a separate will subsequent to the execution of a joint will by the parties without full disclosure of such fact by the one making such separate will to the other testator of the joint will.

". . . If the joint will is made pursuant to the terms of a contract written into the will or a contract made dehors the will, whether such joint will may be revoked even upon notice to the other testator would depend upon the circumstances. If the contract is for a legal consideration and the one testator has fulfilled his part of it, generally speaking such joint will could not be revoked by one testator without the consent of the other." Curry v. Cotton, 356 Ill 538, 191 NE 307 (1934).

Here the will which Mamie Weaver made was not known to Archie Weaver because it was written and offered for probate after he had died.

 It was decided that this was an appeal concerning a joint will which was not also mutual.

". . . A joint will contained in a single instrument is the will of each of the makers, and at the death of one may be probated as his will and be again probated at the death of the other as the will of the latter. Wills may be joint or mutual or both joint and mutual. A joint will is one where the same instrument is made the will of two or more persons and is jointly signed by them. It is not necessarily either mutual or reciprocal. . . . A joint and mutual will is revocable during the joint lives by either party, so far as relates to his own disposition, upon giving notice to the other, but it becomes irrevocable after the death of one of them if the survivor takes advantage of the provisions

236

made by the other. 30 Am Eng Ency of Law, (2d ed) 621, and cases cited; 1 Redfield on Wills, 182, 183; Walpole v. Orford, 3 Ves Jr 402; Schouler on Wills, sec 455, et seq.

"When mutual or joint wills first came up for consideration, the courts of England, both common law and spiritual, pronounced against them, and the same unfavorable position was taken by some of the earlier American cases, but the later and better opinions in both countries now sustain such wills where they have been executed with the necessary formalities and have not been revoked by some later instrument. (Schouler on Wills, 456, and cases there cited.) The leading case in England on this subject is Dufour v. Pereira, 1 Dick 419. In that case it was held that a joint and mutual will might be revoked by both jointly or that it might be revoked separately, provided the party intending it had given notice to the other of such revocation, but that neither of them could, during their joint lives, revoke it secretly, nor could it be done by the survivor after the death of the other; that such wills constituted a mutual contract between the parties which could not be rescinded by the survivor after the death of one, on the theory that the first that dies carries his part of the contract into execution. In such case the courts will not permit the other party to afterwards break the contract. The doctrine of this case has been approved in a number of well considered cases in this country. Allen v. Boomer, 86 Wis 364; Edson v. Parsons, 155 NY 555; Carmichael v. Carmichael, 72 Mich 76; Bower v. Daniel, 198 Mo 289." Frazier v. Patterson, 243 Ill 80, pp 84, 85, 90 NE 216, pp 217, 218 (1909).

█ Thus it was the clear decision of the Illinois courts that a joint will such as this can not be revoked.

The purpose of construing a will is to ascertain if possible the intention of the testator and that should be gathered from the four corners of the instrument itself. In the instant case, from the four corners of the instrument, it can be found that all of the property of the decedent was disposed of in the event that either of them survives.

It was held In re Last Will of Lortz, 28 Ill App2d 287, 171 NE2d 244 (1961) the existence of such a contract was also inferred from the terms of the will. It decided that a joint will was not revocable unless it could be proved by satisfactory evidence that it was not a will of joint makers, which was the case in Jacoby v. Jacoby, 342 Ill App 277, 96 NE2d 362 (1950).

In re Last Will of Lortz, supra, the court said:

> "In Frazier v. Patterson, 243 Ill 80, 90 NE2d 216, the existence of such contract was also inferred from the terms of the Will. In that case the Court stated (at page 86), that where the parties execute the Wills by the same instrument and are husband and wife, the inference is especially strong that there was an understanding that the Will of the survivor was not to be changed. The Court stated that the making of such Will alone was evidence that it was done in accordance with a mutual compact to dispose of the property as set forth in the Will."

And in Frazier v. Patterson, supra, it is further said, at p 85:

> "In such case the courts will not permit the other party to afterwards break the contract. The doctrine of this case has been approved in a number of well considered cases in this country."

In Helms v. Darmstatter, 34 Ill2d 295, 215 NE2d 245 (1966), it was found that the evidence supported the

finding that the joint will of husband and wife was a valid contract and that the codicil subsequently executed by the wife was not effective to provide for contrary disposition.

We are aware of Supreme Court opinions antedating the passage of the new judicial article including In re Will of Lortz, 23 Ill2d 344, 178 NE2d 298 (1961) and In re Estate of Baughman, 20 Ill2d 593, 170 NE2d 557 (1960) which held that the Probate Court did not have jurisdiction to determine whether or not there was a valid contract which would prevent the operation of a later will made by a decedent. The new article, however, did away with the Probative Court and many of these jurisdictional problems. Neither party here argues that the Probate Division of the Circuit Court is not the proper place for a determination of the issues presented. That being so, we feel that the Probate Division had the power to rule on the issues presented in this case.

 So in this case it should be found that the will shows a contract for disposition of the entire estate and that it is proved by the will itself and that the second will executed by the plaintiff, Mamie Weaver, was contrary to the original will and was therefore not valid.

Therefore, we find that the court erred in admitting the second will of Mamie Weaver to probate and that the order should be reversed. The order of the Circuit Court of Cook County, Probate Division, is reversed with directions to deny the admission to probate of the separate will of Mamie Weaver dated October 21, 1960, and to admit to probate the joint will dated February 4, 1959, as the will of Mamie Weaver.

Order reversed and cause remanded with directions.

LYONS and BURKE, JJ., concur.