*In re* ESTATE OF BUFORD WILLIS, Deceased.—(LOUISE WILLIS, Petitioner-Appellee; WILLARD E. OLSON, Ex'r, Respondent-Appellee; JAMES E. WILLIS, Intervenor-Appellant.)

(No. 74-434; )

Third District—November 7, 1975.

Black and Black, of Morris (Frank Black, of counsel), for appellant.

Peter Ferracuti & Associates, of Ottawa (Mel Hoffman, of counsel), for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

James E. Willis, intervenor, appeals from an order of the Grundy County Circuit Court which granted summary judgment to Louise Willis on her claim against the estate of Buford Willis. Buford Willis was the father of James E. Willis and the husband of Louise Willis. Appeal is also taken from the further order of the Circuit Court of Grundy County denying the motion to vacate the judgment.

Buford Willis died in August 1973. In his will which was dated June 21, 1973, he left two thirds of his estate to James Willis, the intervenor (his son by a prior marriage) and one third to his second wife, Louise

Willis, the claimant. After the will was admitted to probate, Louise Willis filed a claim against the estate for the entire proceeds thereof and based the claim on an alleged contract contained in a joint will executed by Louise Willis and the decedent, Buford Willis, on July 29, 1955.

The prior will was declared by both testators to be "our Joint and Mutual Will" and it provided that all property of the first of the testators to die would pass to the surviving testator. It was further provided in such will that, upon the death of the surviving testator, his or her property would be left one half to James E. Willis or his descendants, and one quarter each to Alice Higgins and Phyllis Pope, or their descendants. Alice and Phyllis are daughters of Louise Willis by a prior marriage.

The joint and mutual will contained the following paragraph:

"FIFTH: Our purpose is to dispose of our property in accordance with a common plan. The reciprocal and other gifts made herein are in fulfillment of this purpose and in consideration of each waiving the right, during our joint lives, to alter, amend or revoke this Will in whole or in part, by Codicil or otherwise, without notice to the other, or under any circumstances after the death of the first of us to die."

Louise Willis, the claimant, moved for a summary judgment on her claim that she was entitled to the entire estate, based upon her affidavit and the July 29, 1955, joint and mutual will. The executor opposed the motion on the ground that the claimant was incompetent to testify concerning transactions with the decedent according to the Dead Man's Act (Ill. Rev. Stat. 1973, ch. 51, § 2). Objection was also made that the claimant in fact had notice of her husband's plan to revoke the joint will as to himself, based on affidavits filed by the wife and the daughter of the intervenor, James E. Willis.

The trial court granted the motion of the claimant for summary judgment vesting all the estate in her, and found, first, that the will of July 29, 1955, was a joint and mutual will and constituted a valid and binding contract upon the parties and, secondly, that the contract was breached by the decedent, Buford Willis, when he executed a later will revoking the joint and mutual will as to himself. Later, the executor moved to vacate the judgment on the basis of new affidavits from the intervenor and his wife together with certain letters written by the claimant, Louise Willis, to the intervenor and his wife, which apparently were unknown to the executor and his attorneys at the time of the summary judgment hearing. Subsequently, James E. Willis petitioned to intervene and was permitted to do so. The motion to vacate the judgment for the claimant was denied.

It is first contended by James E. Willis on appeal that it was error

for the trial court to allow claimant to prove a contract with decedent exclusively by her own testimony, which would be barred by the Dead Man's Act referred to, since claimant is an adverse party to the executor as a representative of the deceased. Under Supreme Court Rule 191(a), affidavits, in relation to a motion for summary judgment, before they can receive consideration by a trial court, must affirmatively show that affiant is competent to testify to matters contained therein. (Ill. Rev. Stat. 1973, ch. 110A, § 191(a).) Some of the crucial averments contained in the affidavit of Louise Willis are matters which she could not competently testify to because of the Dead· Man's Act. There was no denial, however, of the execution of the joint and mutual will and the court could, therefore, find that there was a contractual agreement between Buford and Louise Willis, relating to the disposition of their property by such joint and mutual will since the object and purpose of the agreement could be determined from a reading of the joint and mutual will itself.

■■ The joint and mutual will, under such circumstances, is given effect over a later revoking will in that a joint and mutual will of the character involved reflects a contract between the joint testators, which will be enforced in equity despite contrary provisions of a later valid will. (See *In re estate of Baughman* (1960), 20 Ill.2d 593, 602-603, 170 N.E.2d 557.) While the joint and mutual will itself is not necessarily conclusive evidence of the underlying agreement (*Curry v. Cotton* (1934), 356 Ill. 538, 546, 191 N.E. 307), most of the cases indicate a judicial recognition of a presumption in favor of the contract, arising from the existence of the will itself (*Jusko v. Grigas* (1962), 26 Ill.2d 92, 97, 182 N.E.2d 34; *In re Estate of Edwards* (1954), 3 Ill.2d 116, 120-122, 120 N.E.2d 10). The understanding of the parties is determined by reading the will itself and without resort to other testimony. *Tontz v. Heath* (1960), 20 Ill.2d 286, 291, 170 N.E.2d 153; *Helms v. Darmstatter* (5th Dist. 1965), 56 Ill.App.2d 176, 182-184, 205 N.E.2d 478, *aff'd*, 34 Ill.2d 295, 300-302, 215 N.E.2d 245 (1966); *In re Estate of Bell* (1st Dist. 1972), 6 Ill.App.3d 802, 804-805, 286 N.E.2d 589.

In the joint and mutual will with which we are concerned, as was true in several of the cited cases referred to above, the will evidences the intention of the testators to merge their property in the hands of the survivor when one of them dies, and then to distribute it equally to both sides of the family when the survivor dies. As we indicated, sufficient language is contained in the joint and mutual will itself to establish the contract between Buford and Louise Willis without need to refer to the possible incompetent testimony of the claimant as set forth in her affidavit.

Intervenor, however, insists that there was a genuine issue as to a material fact of whether Louise Willis had notice of her husband's intention to revoke the joint and mutual will as to himself and that, therefore, the entry of a summary judgment was improper. The terms of the contract as expressed in the will may be terminated by either party by giving notice to the other party of the intention of the party so desiring to terminate. There is no provision as to the nature of such notice and it could be communicated in any manner which establishes notice of such intention.

The affidavits of Faye and Marsha Willis, wife and daughter of the intervenor, were introduced by the executor in opposition to the motion for summary judgment. It appears from those affidavits that approximately at noon on June 21, 1973, Buford and Louise Willis had some sort of argument and that Buford left the premises with James E. Willis, in the automobile of James E. Willis. Both affiants indicated that at that time the claimant Louise Willis said, "I know what they're up to, but they'll never get away with it." What the decedent Buford Willis was up to was executing a new will on June 21, the same day upon which this comment was made. While this comment may not have unequivocally established the fact of notice, by affidavits later filed by the intervenor and his wife as part of the motion to vacate the judgment it was stated that decedent and the intervenor were on their way to have the new will executed when they left the Willis house on June 21, 1973.

In the affidavits there are statements which might establish a knowledge by Louise Willis at least three years earlier that Buford intended to make a new will. The affidavits were unavailable at the summary judgment hearing and were filed in support of the motion to vacate the summary judgment. A motion had been granted to allow additional time to file a motion to vacate.

The verified affidavits of James E. Willis and Faye Willis, established that Buford and Louise Willis had not been getting along well and that Louise Willis had written to the affiants stating that she had asked Buford to give her a divorce. She also stated that she knew that Buford had changed the beneficiaries of his money in his name in a credit union savings account as well as a life insurance policy and there was attached to the affidavits a copy of the letter from Louise indicating that this was so. The affiants also expressly stated that Buford Willis told James E. Willis that he had already told Louise Willis that he intended to make a new will and revoke the joint and mutual will and that on numerous occasions Louise and he had argued about his intention to do so. The affidavit also showed that Louise Willis had written the affiants in a letter that if Buford Willis predeceased her she could get a widow's

share of one third of the estate but that if she, Louise, died first, he would not get a penny of what she possessed. A copy of the letter was attached as an exhibit and incorporated by reference. The affidavit also emphasized that on June 21, 1973, the day that Buford executed his last will and testament, after he had left the home, Louise Willis told Faye Willis and Marsha Willis that she knew what Buford Willis was up to and that he would never get away with it. Under the circumstances, it is apparent that a genuine issue of fact of whether or not Louise Willis had notice of the intention to make a new will was raised by the affidavits.

Summary judgment has been described as "a drastic method of disposing of litigation" and it is said that the right of the party to invoke such a remedy must be free from doubt. (*Hendricks v. Deterts* (4th Dist. 1973), 13 Ill.App.3d 976, 978; 301 N.E.2d 625; *In re Estate of Girga*, (1st Dist. 1973), 15 Ill.App.3d 916, 920, 305 N.E.2d 565.) In considering the motion for summary judgment a court should view the pleadings and affidavits strictly against the party moving for summary judgment and liberally in favor of the opposing party. See *Cronin v. Delta Air Lines, Inc.* (1st Dist. 1974), 19 Ill.App.3d 1073, 1076, 313 N.E.2d 245.

While the material presented by the executor at the original hearing on the motion for summary judgment may have been insufficient to raise a genuine issue as to claimant's notice, as we observed previously, when the supplementary information, the affidavits and copies of letters, were brought to the court's attention, the court, in construing the issue favorably to those opposed to the motion for summary judgment, should have found that a genuine issue of fact does exist with respect to notice of the intention of Buford Willis to make a new will. While some delay was occasioned in the filing of additional affidavits, the estate filed a request for an extension of time 29 days after the original order of summary judgment and the extension was granted. In view of the importance of the information which was contained in the affidavits and letters, we believe it constituted an abuse of discretion for the trial court to ignore such items so supplied in support of the motion to vacate, and we believe it would not be consistent with the procedures undertaken in the trial court to find that they were filed untimely. Due to the drastic nature of the summary judgment remedy, we must conclude that it was an abuse of the discretion by the court to deny the motion to vacate the summary judgment order in view of the new affidavits and the letters attached to them. We should observe that the delay in presenting the motion to vacate was reasonably explained by the fact that the intervenor and his wife were in Delaware for most of July.

■■ On the basis of the record, therefore, we believe that the summary judgment should be vacated and that a trial on the merits of the

284

issue of whether or not Louise Willis had notice of the intention of Buford Willis to execute a new will and to depart from the joint and mutual will arrangement should be held. The order of the Circuit Court of Grundy County granting summary judgment to the claimant and the order denying the motion to vacate said summary judgment are reversed and the cause is remanded to the trial court for further proceedings in accordance with the views expressed in this opinion.

Reversed and remanded with directions.

STOUDER, P. J., and STENGEL, J., concur.