65 Ill. App.3d 404 (1978)
382 N.E.2d 50
In re ESTATE OF GUSTAV KRITSCH, Deceased.  (ANNA ATKINSON et al., Plaintiffs-Appellants,
v.
MARIE KRITSCH et al., Defendants-Appellees.)
No. 78-404.
Illinois Appellate Court  First District (1st Division).
Opinion filed September 18, 1978.
*405 Brown, Cook & Hanson, of Chicago, for appellants.
Spitzer, Addis, Susman & Roskin, of Chicago, for appellees.
Reversed and remanded.
Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:
Anna Atkinson, Mary Munch and Alice Joachim (plaintiffs), filed a petition against various persons interested in the estate of Gustav Kritsch, deceased, including Egon Kritsch, executor of said estate. Plaintiffs sought relief concerning the wills of said Gustav Kritsch, deceased, and his deceased first wife, Bessie Kritsch. After a hearing, the trial court allowed the motion of Egon Kritsch, as executor, to strike and dismiss the petition of plaintiffs. Plaintiffs have appealed.
In this court, plaintiffs contend that the wills of the late Bessie and Gustav Kritsch were mutual and contain a plan for distribution of the estate of the last of these two testators to die. In addition, plaintiffs urge that any existing ambiguity as to the intent of the testators did not justify the dismissal of plaintiffs' petition. In response the executor, Egon Kritsch, contends that the mutual wills of Bessie and Gustav Kritsch clearly contain a plan for distribution of the estate of the first to die to the survivor in fee if such survival is by more than 90 days. The executor also urges that there is no ambiguity as to the intent of the testators so that it *406 was proper for the trial judge to strike and dismiss the petition of plaintiffs.
 1 Since the order of dismissal was entered upon allowance of the motion to dismiss filed by the executor, all facts properly pleaded in the petition of plaintiffs must be taken as true. (Kendall v. Kendall (1978), 71 Ill.2d 374, 375, 375 N.E.2d 1280; Steinberg v. Chicago Medical School (1977), 69 Ill.2d 320, 329, 371 N.E.2d 634.) A statement of the facts before us for purposes of this appeal follows.
On January 30, 1956, Gustav Kritsch and Bessie Kritsch, his wife, executed mutual wills. These wills were identical except for the names of the testators and designation and description of the primary beneficiary of each will. Each will contained the following paragraph (identical except for use of "husband, Gustav E." in Bessie's will and "wife, Bessie" in Gustav's will):
"SECOND: It has been agreed between me and my husband, GUSTAV E. KRITSCH, In consideration of our mutual bequests and in pursuance of a compact between us, that we shall each make a separate will bearing the same date, disposing of our property, both real and personal, wherever situated, in such a way as to accomplish certain things, and we have agreed between us and in consideration of each other's mutual promises and covenants that said wills, as so made, will not be revoked or destroyed by either of us, nor will either of us change the terms by codicil or by a subsequent will without the full consent and agreement of the other."
In the third paragraph of each will, each testator gave to the other "all my property, both real and personal."
Each will contained a fourth paragraph stating (except for use of "husband" in Bessie's will and "wife" in Gustav's will):
"FOURTH: If my said husband shall not survive me or, surviving me, shall not be living on the day ninety (90) days after my death, then and in that event I give, devise and bequeath all of my property, both real and personal, as follows:"
Immediately following this, each of the testators made identical bequests to a bible institute and the balance of each estate was left in various designated fractional shares to relatives of both testators. Each testator made the other their sole executor with a designated bank as successor.
On February 11, 1966, each testator executed a codicil to their last wills. These codicils each revoked the legacy to the bible institute. Each revoked the appointment of the bank as successor executor and designated Bessie's brother and Gustav's nephew as successor co-executors of both wills.
*407 Bessie Kritsch died on January 29, 1974. Her will and codicil were filed in the probate division of the circuit court of Cook County. On July 7, 1975, Gustav Kritsch executed another will. He devised all of his estate to his various relatives in equal shares. He appointed his nephew, Egon Kritsch, as executor. On October 7, 1976, Gustav married Marie Kritsch. Gustav Kritsch died on November 26, 1976. His last will, dated July 7, 1975, was duly admitted to probate on April 7, 1977.
The motion to strike the petition of plaintiffs advances the theory that the fourth article of the will of Bessie Kritsch, dated January 30, 1956, provided that all property of the testator was to go to Gustav Kritsch if Gustav survived Bessie for more than 90 days after the death of Bessie, all of the property passed to him as sole owner and therefore passed to the beneficiaries of his subsequent will dated July 7, 1975.
The trial court heard argument of counsel and studied memoranda filed by both parties. In its final order the trial court found that the wills executed by Gustav and Bessie on January 30, 1956, were "mutual binding Wills." The court found that a compact existed between these testators as recited in the second article of their mutual wills above quoted. The trial court also found that since Gustav had survived Bessie by more than 90 days, the condition created in the language of the will was satisfied and, under paragraph fourth above quoted, Gustav Kritsch had full control and right to dispose of all of the property which had passed to him.
 2, 3 The essential principles concerning joint and mutual wills are well set forth in Curry v. Cotton (1934), 356 Ill. 538, 543, 191 N.E. 307:
"The terms `joint wills' and `mutual wills' are sometimes inaptly used interchangeably. A joint will is a written instrument executed and published by two or more persons disposing of the property, or some part of the property, owned jointly or in common by them or in severalty by them. On the death of the testator first dying it is subject to record and probate as his will, and on the death of the surviving testator it is subject to probate as his will. A joint will may or may not be mutual or reciprocal. Mutual or reciprocal wills are the separate instruments of two or more persons, the terms of such wills being reciprocal and by which each testator makes testamentary disposition in favor of the other. (30 Am. & Eng. Ency. of Law, 556.) A will that is both joint and reciprocal is an instrument executed jointly by two or more persons with reciprocal provisions and shows on its face that the bequests are made one in consideration of the other. (Frazier v. Patterson, 243 Ill. 80, 28 R.C.L. 167.)"
 4 Applying this teaching to the record before us, we conclude that the learned trial judge correctly found that Bessie and Gustav executed mutual wills on January 30, 1956. These two instruments contain identical *408 and reciprocal provisions in that each testator bequeathed all of his property to the surviving spouse. Identical secondary beneficiaries were named in the dispositive provisions of paragraph four of each document. The codicils executed on February 11, 1966, further support this result. Bessie's brother and Gustav's nephew were designated as successor co-executors to each of the spouses themselves.
 5 We further agree with finding of the trial court that a contract existed between Gustav and Bessie as recited in paragraph two of each will. In the case of mutual and reciprocal wills of this type, a judicial presumption arises in favor of the existence of the contract from the existence of the mutual wills themselves. It is not necessary to resort to additional testimony to determine the existence of an agreement between the parties. (In re Estate of Willis (1975), 33 Ill. App.3d 279, 281, 337 N.E.2d 35, and cases there cited.) "A joint and mutual will may be executed pursuant to a contract or may itself constitute a contract, which, after the death of one maker, will, under appropriate circumstances, be enforced by a court of equity." Jusko v. Grigas (1962), 26 Ill.2d 92, 97, 186 N.E.2d 34, and cases there cited.
 6 The existence of a binding contract between these testators is specifically expressed in paragraph two of each will. The documents state they are executed "in consideration of our mutual bequests and in pursuance of a compact between us * * *." It is also apparent from a reading of both wills that the parties entered into a common plan of distribution providing for the final division of their assets to both of their relatives upon the demise of the surviving spouse. In view of the binding compact between them, Gustav was not at liberty to disregard these bequests itemized in paragraph four of both wills simply by surviving Bessie by a period of more than 90 days. To permit this result would directly contradict the plan of distribution to the families of the testators entered into by both parties at the time the mutual wills were executed.
Our conclusion is supported by the decision of this court in Freese v. Freese (1977), 49 Ill. App.3d 1041, 364 N.E.2d 983. There, a husband and wife executed mutual wills for the disposition of all the property owned by each party. The residuary clause of each will provided for the distribution of the property equally among their four children. Although the court recognized that the wife's will left certain property to the husband in fee, it was clear from a reading of both wills that the testators intended the entire balance of the property to pass equally to the children of both. This court concluded that testamentary transfers made by the husband after the death of the wife, which altered the interests of the children, breached the binding contract evidenced by the mutual wills.
Similarly, in Helms v. Darmstatter (1966), 34 Ill.2d 295, 299, 215 N.E.2d 245, a joint and mutual will executed by spouses bequeathed all property *409 "`to the survivor of us, as his or her absolute property forever'," which bequest was followed by a separate clause containing a plan of distribution following the death of the surviving spouse. The court held that the use of the term "absolute" in the former bequest could not defeat the distribution plan of the second bequest but that the two clauses must be read together. The court concluded that the equal treatment of the family members of both spouses in the dispositive plan "is so clearly provided for that it" prohibited a contrary testamentary disposition by the surviving spouse in derogation of the intent revealed in the joint and mutual will. Helms, 34 Ill.2d 295, 301.
 7 The executor directs our attention to the four corners of one of the mutual wills and urges that the bequests of paragraph four are specifically made effective only if the surviving spouse does not survive the other by 90 days. However, in the case before us, consideration must necessarily be directed to both of the two documents which, in their reciprocal and identical nature, constitute a binding compact of both parties. Although the property passed to Gustav in fee simple upon the death of Bessie, the binding compact became irrevocable upon her death and prohibited Gustav from any testamentary disposition of the assets contrary to the plan of family distribution so clearly expressed in paragraph four of both wills.
 8 We find no ambiguity created by the introductory language of paragraph four of these wills. The 90-day survivorship provision represents a common device used to eliminate the possibility of a double probate of the assets of the first spouse to die in the event the death of the surviving spouse occurs within the 90 day period. Both Freese and Helms support our conclusion that the bequest to the surviving spouse in paragraph three of each will cannot defeat the mutual bequests to the remaining family members of both testators in accordance with the common plan of distribution of assets agreed to by the testators.
In our opinion, the contention of the executor regarding the significance and meaning of the fourth clause above described stems from an erroneous premise. The executor persists in considering the language of only one of the mutual wills. Since both of these mutual wills considered together constitute the agreement between the two testators, it is not only proper but essential that they be construed together.
This is a familiar and long accepted legal doctrine. For example, statutes which are pari materia or which pertain to the same subject should be considered together in ascertaining legislative intent. Gillespie v. Riley Management Corp. (1974), 59 Ill.2d 211, 215, 319 N.E.2d 753; Illinois-Indiana Cable Television Association v. Illinois Commerce Com. (1973), 55 Ill.2d 205, 220, 302 N.E.2d 334; People v. Gardner (1977), 52 Ill. App.3d 386, 389, 367 N.E.2d 437; People v. Gardner (1973), 15 Ill. App.3d 255, *410 257-58, 304 N.E.2d 125 cited in People v. Patterson (1977), 54 Ill. App.3d 931, 935, 370 N.E.2d 819, appeal denied (1978), 71 Ill.2d ___.
 9 Similarly, as a matter of contract law, each of the mutual wills refers to the other and they were contemporaneously executed. Therefore they should be construed together. See H.F. Philipsborn & Co. v. Suson (1974), 59 Ill.2d 465, 472, 322 N.E.2d 45; West Lands Construction Co. v. Calhan (1970), 124 Ill. App.2d 453, 457-58, 259 N.E.2d 408.
When the mutual wills here involved are examined side by side, the matter becomes clarified and the intent of the testators regarding their plan of distribution of their property is manifest.
The order appealed from is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.
Order reversed; cause remanded.
O'CONNOR and BUCKLEY, JJ., concur.