THE NORTHERN TRUST COMPANY, Trustee, Plaintiff-Appellee, *v.* SYLVIA TARRE *et al.*, Defendants-Appellees.—(LEONARD KAPLAN *et al.*, Defendants-Appellants.)

First District (1st Division)   No. 79-496

Opinion filed April 28, 1980.

John F. McCarthy, Esther R. Rothstein, and Robert Lee Shapiro, all of Chicago (McCarthy & Levin, of counsel), for appellants.

Barnard & Barnard, of Chicago (Morton John Barnard, of counsel), for appellee The Northern Trust Company.

Daniel M. Schuyler, Edgar D. Ballard, Jr., and Schuyler, Ballard & Cowen, all of Chicago, for appellees Sylvia Tarre, Marc Tarre, and Laurel Tarre Goodman.

Edward T. Joyce, Ltd., of Chicago (Edward T. Joyce and Steven J. Rotunno, of counsel), for appellee Joseph Tarre.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County finding that because inter vivos trusts executed by Harry Kaplan (Harry) and Fannie Kaplan (Fannie), as settlors, and the Northern Trust Company (Northern), as trustee, were not joint, mutual and reciprocal agreements irrevocable upon the death of one of the parties, an amendment to the trust agreement executed by Harry after Fannie's death was valid.

Harry and Fannie, husband and wife, had two children, Leonard Kaplan (Leonard) and Sylvia Tarre (Sylvia). Harry and Fannie had four grandchildren: Raymond Kaplan and Linda Kaplan Beatus, son and daughter of Leonard, and Marc Tarre and Laurel Tarre Goodman, son and daughter of Sylvia. Harry and Fannie had one great-grandchild: Joseph Tarre, a minor, son of Marc Tarre.

On August 26, 1969, Harry and Fannie, as settlors, and Northern, as trustee, entered into a trust agreement whereby Harry transferred certain property to Trust A (Harry's trust) and Fannie transferred identical property to Trust B (Fannie's trust). The two trusts were contained in a single document entitled "TRUST AGREEMENT TRUST NO. 36368" executed by both settlors.

Each trust directed the trustee to distribute all income from the trust property to the settlor in quarter-annual or more frequent intervals during his or her lifetime. The trustee was also authorized to distribute to the settlor such amounts from the principal of the trust as the trustee determined to be necessary or desirable to provide for the settlor's support, comfort or welfare or to be in accordance with his or her needs and best interests. Each trust further provided that if during the settlor's lifetime his or her spouse had insufficient income and cash resources available to adequately provide for his or her support or to meet any emergency, the trustee could distribute to the settlor's spouse so much of the principal of the trust as the trustee deemed necessary. In addition, each trust made provision for distribution of so much of the principal of the trust as necessary to the settlor's children or descendants if an emergency such as a serious illness or injury affected one of them. Each settlor reserved the right to amend or revoke "at any time and from time to time" his or her trust by delivering a written instrument to the trustee.

Each trust contained a paragraph authorizing the trustee to use the assets in the trust to pay funeral expenses, death taxes, legally enforceable claims against the estate and reasonable expenses of administration of his or her estate if assets of the settlor's estate not part of the trust were insufficient. Fannie's trust provided that upon her death $5,000 was to be distributed to her nephew, David Sterlin, from the principal of the trust.

Each trust provided that if one settlor survived the other for a period

of 180 days, the trustee was to allocate to the survivor's trust from the principal of the deceased settlor's trust an amount which in no event would exceed the difference between the value of the deceased settlor's trust and $75,000 so that no less than $75,000 remained in the deceased settlor's trust.

In addition, each trust provided that if one spouse survived the other, the survivor was to receive the income from his or her spouse's trust during his or her lifetime. If at any time or from time to time during the surviving settlor's lifetime, the income and cash resources available to the survivor were insufficient to provide adequately for his or her support, the trustee could distribute to the survivor so much of the principal of the trust as the trustee deemed necessary therefor.

Article III of the trust agreement directed that upon the death of the survivor of Harry and Fannie, the trustee was to commingle Harry's trust and Fannie's trust. From the fund established after the two trusts were commingled, the trustee was to make certain distributions. If the settlors' daughter, Sylvia Tarre, was alive, the trustee was to set aside $100,000 in cash or property and hold the same in a separate trust designated Trust C (Sylvia's trust). Provision was made to divide the $100,000 between Sylvia's children if Sylvia was not alive when the surviving settlor died. The Northwest Home for the Aged (Northwest) was to receive $5000. The residue of the commingled trusts was to be divided one-half to the settlors' son, Leonard Kaplan, and one-half in equal shares to the four grandchildren. However, if Harry's trust and Fannie's trust after having been commingled were insufficient to set aside $100,000 in trust for Sylvia and to distribute $5000 to Northwest, the $100,000 to be set aside in Sylvia's trust was to be satisfied before the distribution to Northwest. The provision directing the disposition of the residue of the commingled trusts was subject to satisfaction of the $100,000 to be set aside in Sylvia's trust and the $5000 distribution to Northwest.

Article IV of the trust agreement set forth the provisions regarding Sylvia's trust. Article V concerned the administration and distribution of shares to the children and descendants of Leonard and Sylvia. The remaining articles of the trust agreement dealt with the powers and duties, resignation and succession of the trustee, restrictions on transfers, the law governing construction of the agreement and definitions of terms used in the agreement.

Fannie died April 12, 1976. At the time of Fannie's death, the gross value of Fannie's trust was $123,981.20. Insurance on Fannie's life in the amount of $2,122.53 was paid to Fannie's trust. In accordance with the trust agreement, Northern paid $15,234.86 for expenses, claims and Federal estate taxes. In addition, Fannie's nephew, David Sterlin,

received $5,000. The net value of Fannie's trust was $110,868.87. Because Harry survived Fannie for 180 days, the trustee allocated to Harry's trust the difference between Fannie's trust and $75,000. Therefore, the trustee allocated to Harry's trust $30,868.87. The amount of $75,000 remained in Fannie's trust.

On May 26, 1976, Harry executed an amendment to his trust. After directing that certain expenses and a distribution of $5000 to Northwest be paid upon his death, the amendment provided that the income from Harry's trust was to be paid to Sylvia during her lifetime. The trustee was given the authority to make distributions from the principal to Sylvia in accordance with prescribed standards and to make distributions from the principal to either of Sylvia's children in the event of an emergency. Upon Sylvia's death, Northern was to pay Sylvia's funeral expenses and expenses of last illness and distribute the rest of the trust in equal shares to Sylvia's children.

Articles III (dealing with the disposition of Harry's trust and Fannie's trust upon the death of the survivor of Harry and Fannie, including the creation of Sylvia's trust therefrom), IV (dealing with the disposition of Sylvia's trust), and V (dealing with the administration and distribution of any share provided for any child or descendant of Leonard or Sylvia) were deleted from Harry's trust.

Harry died July 8, 1977. At the time of Harry's death, the gross value of Harry's trust was $164,744.60. This amount included $25,305.89 of life insurance on Harry's life payable to Harry's trust and the $30,868.67 transferred from Fannie's trust to Harry's trust upon Fannie's death. In accordance with the trust agreement, Northern paid $14,200.90 for expenses, claims and the distribution to Northwest. Therefore, the net value of Harry's trust was $150,543.70.

Northern indicated its intention to set aside the entire $75,000 remaining in Fannie's trust in partial satisfaction of the $100,000 to be set aside in Sylvia's trust in accordance with the original trust agreement and its intention to distribute the property in Harry's trust in accordance with the amendment to the trust agreement. Sylvia agreed with this disposition, but Leonard objected.

Northern brought suit to seek instruction from the court as to the correct disposition of the trust property. Named as defendants were Sylvia Tarre, Marc Tarre and Laurel Tarre Goodman (the Tarre defendants), Leonard Kaplan, Raymond Kaplan and Linda Kaplan Beatus (the Kaplan defendants) and Joseph Tarre, a minor. The Kaplan defendants argued that because the trust agreement executed by Harry and Fannie was a joint, mutual and reciprocal agreement, it was irrevocable upon the death of one of the parties and the amendment to

the trust agreement executed by Harry after Fannie's death was of no effect. Alternative theories to support their position were also argued below by the Kaplan defendants. The trial court found that the trusts were not joint, mutual and reciprocal agreements irrevocable upon the death of one of the parties and that the amendment to the trust was valid.

The court below found that under the amendment the value of Harry's trust ($150,543.70) was to be held in trust for Sylvia's benefit during her lifetime, remainder to her descendants. The court determined that the $75,000 remaining in Fannie's trust was to be set aside for Sylvia's benefit in partial satisfaction of the provision contained in article III of the original trust agreement directing that $100,000 was to be set aside for Sylvia's benefit. Therefore, nothing was left to be distributed to Leonard and the four grandchildren. The Kaplan defendants appeal.

The trial court also awarded the following amounts as reasonable attorneys' fees: $7,500 for Northern's attorneys; $747 for the guardian ad litem for Joseph Tarre and trustee for the interests of persons not in being; $6,000 for the Tarre defendants' attorneys; and $6,000 for the Kaplan defendants' attorneys. The Tarre defendants cross-appeal from that portion of the trial court's judgment awarding the Kaplan defendants attorneys fees.

On appeal, the Kaplan defendants contend that the amendment to the trust agreement is invalid because the original trust agreement established a joint, mutual and reciprocal trust irrevocable and unalterable after the death of one of the settlors. In the alternative, the Kaplan defendants contend that even assuming the amendment to the trust agreement is valid, the $75,000 remaining in Fannie's trust should be distributed for the benefit of Leonard and the four grandchildren because such a disposition would fulfill the intention both settlors had at the time they executed the original trust agreement. Also in the alternative, the Kaplan defendants further contend that even assuming the amendment is valid, the $75,000 remaining in Fannie's trust cannot be distributed under the provisions of the trust agreement as amended and must instead be distributed as intestate property to Leonard and Sylvia as the only heirs of Harry and Fannie.

The Tarre defendants, Northern and the guardian ad litem make substantially identical contentions on appeal. It is their position that the amendment to the trust agreement is valid because it was executed in accordance with the provisions of the trust agreement. In addition, these parties contend that joint and mutual trusts are unknown to the law of trusts and that even if the joint and mutual trust argument was appropriate, it cannot apply to a trust which is revocable by its terms. Therefore, the Tarre defendants, Northern and the guardian ad litem

contend that the $150,543.70 in Harry's trust should be held in trust for Sylvia pursuant to the amendment and that the $75,000 remaining in Fannie's trust should be held in Sylvia's trust in accordance with the provisions of the trust agreement as originally written.

If the amendment is valid, as the Tarre defendants, Northern and the guardian ad litem contend, the total value of Harry's trust ($150,543.70) would be held in trust for Sylvia's benefit during her lifetime, remainder to her descendants. In addition, according to the original trust agreement, the $75,000 remaining in Fannie's trust would be placed in Sylvia's trust in partial satisfaction of the provision in the trust agreement that the first $100,000 of the commingled trusts was to be placed in Sylvia's trust. Under this construction of the trust agreement and the amendment thereto, all the property held in trust is to be held for Sylvia's benefit to the exclusion of Leonard and the four grandchildren.

If the amendment is found to be of no effect, as the Kaplan defendants contend, the value of Harry's trust ($150,543.70) is to be commingled with the value of Fannie's trust ($75,000). The amount of the commingled trusts ($225,543.70) would be distributed as follows: $100,000 to Sylvia's trust; $5,000 to Northwest; $60,271.86 to Leonard; and $15,067.96 to each of the four grandchildren.

Joint and mutual wills have long been recognized in Illinois. (*Frazier v. Patterson* (1909), 243 Ill. 80, 90 N.E. 216; *Curry v. Cotton* (1934), 356 Ill. 538, 191 N.E. 307.) It is well settled law that when a joint and mutual will is made pursuant to a contract between the testators it may be revoked during the joint lives of the parties upon giving notice by one testator to the other, but the joint and mutual will becomes irrevocable after the death of one of the testators. (*Curry v. Cotton; Bonczkowski v. Kucharski* (1958), 13 Ill. 2d 443, 150 N.E.2d 144; *In re Estate of Kritsch* (1978), 65 Ill. App. 3d 404, 382 N.E.2d 50.) When it is established that the instrument is contractual or was executed pursuant to a contract, equity finds that the survivor is estopped to dispose of his property in any manner other than as agreed upon and that such contract may be enforced by the beneficiaries. (*Bonczkowski v. Kucharski.*) A judicial presumption arises in favor of a contract from the existence of joint wills or a joint and mutual will. (*In re Estate of Willis* (1975), 33 Ill. App. 3d 279, 337 N.E.2d 35; *In re Estate of Kritsch.* But see *Campbell v. Cowden* (1974), 18 Ill. App. 3d 500, 309 N.E.2d 601.) The burden is upon the party who asserts a contract to establish it by clear, convincing and satisfactory evidence. (*Bonczkowski v. Kucharski; Tontz v. Heath* (1960), 20 Ill. 2d 286, 170 N.E.2d 153; *Freese v. Freese* (1977), 49 Ill. App. 3d 1041, 364 N.E.2d 983.) "Proof *aliunde* a joint will is not required and the evidence admissible to prove the agreement may take various forms, such as the instrument itself, or the

competent testimony of competent witnesses as to the declaration of the testators or as to relevant facts and circumstances." *Bonczkowski v. Kucharski* (1958), 13 Ill. 2d 443, 453, 150 N.E.2d 144.

■■ In the case at bar, no testimony was offered at trial. The court below reached a decision based on the pleadings and memorandum submitted by the parties. Because the evidence before the trial court consisted entirely of documentary evidence, we are not bound by the trial court's findings of fact, but may examine the evidence ourselves and reach an independent decision. *Cassidy v. Luburich* (1977), 49 Ill. App. 3d 596, 364 N.E.2d 315.

We note that the settlors had two children and four grandchildren. Under the trust agreement as originally written, Harry and Fannie favored their daughter Sylvia and her children over their son Leonard and his children. However, Leonard and his children were not excluded from sharing in the settlors' property.

Turning to the trust instrument itself, the language of the third article is an indication of a predesigned agreement. In that article the settlors provide that upon their deaths, the property in both trusts is to be commingled. From that common fund certain disposition was to be made of the property. "Such a pooling of interests and then jointly providing for the disposal of the whole fund gives every indication of a mutual compact." *Bonczkowski v. Kucharski* (1958), 13 Ill. 2d 443, 455, 150 N.E.2d 144; see also *Helms v. Darmstatter* (1966), 34 Ill. 2d 295, 215 N.E.2d 245.

Although the settlors did not specifically state in the trust agreement that such agreement was made pursuant to a contract between the settlors, we are of the opinion that a contract existed. The settlors were husband and wife who made identical reciprocal provisions for the benefit of themselves, their children, their grandchildren and a favorite charity, with the exception of a provision in Fannie's trust directing that a $5,000 distribution be made to her nephew upon her death. It appears that the property transferred to the two trusts was Harry and Fannie's jointly owned property. The property of both is treated as a common pool, and the provisions disposing of such after their deaths are directed by both rather than by each of them individually.

Furthermore, the situation here presents a family settlement which should be favored on grounds of public policy because such arrangements contribute to the peace and harmony of families and to the prevention of litigation. *In re Estate of Bell* (1972), 6 Ill. App. 3d 802, 286 N.E.2d 589.

■■ We find that the evidence is sufficient to establish a contract between Harry and Fannie to dispose of their property according to a common plan.

The appellees argue that joint and mutual trusts are unknown to the law of trusts. It is true that the parties have not cited nor have we found any Illinois decision regarding joint and mutual trusts. However, in *Reznik v. McKee* (1975), 216 Kan. 659, 534 P.2d 243, it was held that where spouses executed *inter vivos* revocable trusts a contractual agreement between the parties was indicated and that, therefore, an amendment executed by one of the settlors after the other settlor's death was ineffective. That court found that the most persuasive consideration indicating a preexisting agreement between the settlors was the provision in each trust directing the disposition of the trust property after both settlors' deaths. There, the husband's trust omitted benefits for the settlors' children and the wife's trust omitted benefits for the settlors' grandchildren. Both instruments stated that the other settlor had made ample provision for the persons he or she was omitting as beneficiaries.

The appellees further contend that even if the joint and mutual trust argument is appropriate, it can not apply to a trust which is revocable by its terms. However, we agree with the court in *Reznik v. McKee* when it stated (216 Kan. 659, 678-79, 534 P.2d 243, 259):

> "We perceive no inconsistency between the fact that the parties expressly reserved the right to alter, amend or revoke their trusts and our construction of the instruments as being contractual in nature. The right of each settlor to amend or revoke his or her trust proves nothing about the existence or non-existence of a contract.
>
> Under the law with respect to joint and mutual wills, it is readily apparent the power to amend or revoke is irrelevant as to whether or not a contractual relationship exists between the parties. *Wills are ambulatory and therefore may be revoked or amended at any time before the testator's death.* Despite this inherent feature of revocability, it is the general rule that joint or mutual wills which are contractual in nature prevent the surviving spouse from escaping the obligations of his or her agreement by revoking or amending the will. There is no substantial reason why the revocable trusts in the instant case should be treated differently than joint or mutual wills. The reservation of the right to alter, amend or revoke an *inter vivos* trust does not destroy the [settlors'] agreement." (Emphasis in original.)

We find that after Fannie died, Harry's position was as if he were a testator to a joint and mutual will. He had the authority to amend his trust. However, because he amended it in breach of his contract with Fannie, the amendment was invalid and ineffective. Harry's trust and Fannie's trust are to be commingled. The amount of the commingled trusts ($225,543.70) is to be distributed as follows: $100,000 to Sylvia's trust;

$5,000 to Northwest; $60,271.86 to Leonard; and $15,067,96 to each of the four grandchildren.

The remaining issue is that of attorneys' fees. The trial court awarded attorneys' fees payable from Fannie's trust to each of the parties' attorneys. The Tarre defendants appeal from that part of the trial court judgment awarding attorneys' fees to the attorneys for the Kaplan defendants. The Tarre defendants contend that the court below erred in awarding the Kaplan defendants' attorneys their fees because the litigation was necessitated by reason of the Kaplan defendants' objections to Northern's intended distribution of the trust property and because the Kaplan defendants' position had no legal basis. The Kaplan defendants contend that the trial court should not have allowed any fees until after final disposition of any appellate proceedings and that such fees should have been paid from either Harry's trust or the commingled trusts—but not solely from Fannie's trust. The Kaplan defendants further contend that because the trial court did grant fees at that time, the allowance of fees to their attorneys was proper.

The determination of the need for and amount of attorneys' fees rests in the discretion of the trial court. (*Stuart v. Continental Illinois National Bank & Trust Co.* (1977), 68 Ill. 2d 502, 369 N.E.2d 1262.) Where the litigation is a result of honest differences of opinion, attorneys' fees will be chargeable to the estate. *Orme v. Northern Trust Co.* (1962), 25 Ill. 2d 151, 183 N.E.2d 505.

■ In the case at bar, we find that the awarding of attorneys' fees to the Kaplan defendants' counsel did not constitute an abuse of discretion because there was an honest difference of opinion between the parties.

Because we find that Harry's trust and Fannie's trust are to be commingled and disposition to beneficiaries made therefrom, whether attorneys' fees should be paid from Harry's trust, Fannie's trust or the commingled trusts is of no consequence because there will be no disproportionate effect upon the share of any beneficiary.

The judgment of the circuit court of Cook County is reversed and the cause remanded for further proceedings in accord with the views here expressed.

Reversed and remanded with directions.

GOLDBERG, P. J., and McGLOON, J., concur.